THE VILLAGE OF BRIDGEVIEW, Plaintiff-Appellee, *v.* EDWARD
SLOMINSKI, Defendant-Appellant.

First District (5th Division)   Nos. 78-737, 78-738 cons.

Opinion filed June 29, 1979.

William R. Dunn and J. Brian McDonnell, both of Oak Lawn, for appellant.

Robert E. Grundin, P. C., of Ancel, Glink, Diamond & Murphy, P. C., of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Following a bench trial, defendant was found guilty of violating certain ordinances of the Village of Bridgeview which involved

maintaining uncovered refuse (ch. 8, §7—8—3) and maintaining a nuisance (inoperable motor vehicles) (ch. 10, §10—10—4). Defendant was fined $500 and court costs for each violation. On appeal defendant raises the following issues: (1) whether the motion to suppress evidence obtained from an alleged illegal search was improperly denied; (2) whether the Village of Bridgeview sustained its burden of proof; and (3) whether the ordinances involved are unconstitutional. We affirm in part and reverse in part.

Prior to the suppression hearing, defendant filed a motion to declare the ordinances unconstitutional and the motion was denied. The pertinent evidence adduced at the suppression hearing and the trial follows.

HEARING ON DEFENDANT'S MOTION TO SUPPRESS PHOTOGRAPHS

On direct examination, Officer Anthony Siciliano of the Bridgeview Police Department testified that on June 17, 1975, he and Ed Nagle, an environmental officer of Bridgeview, appeared at 8027 S. Harlem Avenue in Bridgeview, Illinois, for the purpose of inspecting the premises. The inspection was based upon the receipt of numerous complaints regarding the condition of the premises. Siciliano did not have a search warrant nor a warrant for defendant's arrest on this occasion. He described the property as consisting of a house and a tavern, both of which face Harlem Avenue. Prior to entering the premises Siciliano observed what he described as "refuse, junk vehicles and garbage" located on the front and side of the house as well as the side of the tavern. He described the vehicles as consisting of two trucks, approximately 20 years old, without license plates and "loaded with storage of stuff that sells at flea markets." He further stated that the merchandise appeared to be rotting and that he had seen the vehicles with the same merchandise inside of them for the past ten years. He then proceeded to inspect the vehicles more closely but did not touch anything. When questioned as to whether anyone had invited him onto the premises, Siciliano replied, "No, sir. He sells stuff. It's more like a public place." Prior to taking photographs of the premises, however, Siciliano stated that he requested permission to do so and an individual, whom he did not identify, replied that he could take as many photographs as he wished. He then proceeded to inspect the entire premises.

On cross-examination Siciliano stated that defendant's property had been annexed to the village since 1967 and that the Guildish Mobile Park, which housed approximately 1200 to 1500 residents, was located directly south of this property. He further stated that the objects he observed on the day in question were in plain view and that on previous occasions these objects had been observed in plain view from nearby property.

On direct examination defendant Edward Slominski testified that he

did not give Siciliano his permission to enter the premises, nor to inspect the trucks or to take photographs. There was no cross-examination of defendant. Subsequently, defendant's motion to suppress was denied.

TRIAL OF UNCOVERED REFUSE AND NUISANCE CHARGES

On direct examination Siciliano testified that he has been employed as an officer of the Bridgeview Police Department for 17 years and as an ordinance enforcement officer for 5 years. His duties consist of handling all complaints received by the department regarding vehicles, garbage, fences, and other ordinance violations. He stated that on June 17, 1975, he went to 8027 S. Harlem Ave. in Bridgeview, for the purpose of serving defendant a summons. He walked into the tavern and proceeded to serve defendant with the summons, when defendant took the summons and threw it back at him. Siciliano picked it up and placed it on the bar. He then walked out of the tavern, got his camera, and proceeded to take photographs. Nagle was also present at this time. The photographs were admitted into evidence subject to cross-examination. Siciliano further stated that he had a conversation with defendant, in Nagle's presence, concerning the condition of the premises. His testimony was as follows:

"The Witness: On the date in question [Y]our Honor, I had [sic] talked to Mr. Slominski in regards to cleaning his property. He advised me he had [sic] been there 29 years. He's not in the Village of Bridgeview and he's not going to clean up, that the Village of Bridgeview took him in without his knowledge."

On cross-examination Siciliano stated that he had known defendant for 18 years and that the summons he attempted to serve defendant was an order for him to appear in court regarding the refuse and alleged inoperable motor vehicles on his property. He stated that he had the summons prior to taking the photographs. However, later he stated that "[t]he pictures were not taken after—the summons—they were taken two or three days—." When questioned as to his previous testimony concerning his attempt to serve defendant with the summons, Siciliano replied that he could not recall what had occurred. He then stated that he saw inoperable motor vehicles, cars, trucks, and step-in vans on the premises. He made no attempt to start or jump the vehicles nor had he ever seen anyone place them there. However, later he stated that on prior occasions he had seen defendant place some of the photographed articles inside of the vehicles.

On direct examination defendant testified that he had known Siciliano prior to this incident because Siciliano had come to the premises on several occasions when he needed certain materials for the village. Defendant stated that on the day in question Siciliano appeared at the

premises several times. On one occasion, defendant saw Siciliano and two other men walk onto the premises and proceed to the rear. On another occasion Siciliano returned with a summons for defendant and defendant told him that he needed a warrant in order to search the premises. Defendant stated that Siciliano became upset with him and that Siciliano had· the police serve him with an arrest warrant. Thereafter, defendant was arrested.

Defendant then denied ever having been the licensee of the property. He stated that the inoperable motor vehicle shown in one of the photographs was the only one located on the premises on June 17 and that some kids had brought it there from the trailer park and had stripped it. The vehicle had been there for a few weeks or a few months. As far as he knew, the other vehicles on the property were not inoperative and in fact were operative when placed there.

There was no cross-examination of defendant. Both sides then rested. On October 27, 1977, defendant was found guilty of both charges and he was fined $500 and court costs for each violation. A motion to vacate was entered and continued to December 29, 1977. The court stipulated that the motion would be granted if the premises were cleaned up. Defendant did not follow the court's stipulation, but elected to appeal.

Opinion

Defendant initially contends that the trial court erred in denying his motion to suppress evidence obtained from an alleged illegal search. Defendant argues that Siciliano's entry upon private property without an arrest warrant or a search warrant for the purpose of taking photographs to be used as evidence at the subsequent trial of defendant, constituted an unreasonable search and seizure in violation of the fourth amendment of the United States Constitution and article 1, section 6 of the Illinois Constitution. In response, plaintiff argues, and we agree, that there was no search made since the evidence seized falls within the purview of the open view doctrine.

■█ A defendant who urges the suppression of illegally obtained evidence carries the burden of establishing that there was a search and that the search was illegal. (*People v. Berg* (1977), 67 Ill. 2d 65, 364 N.E.2d 880.) It has been held that a search implies prying into a hidden place for that which is concealed, or an invasion and quest with some sort of force, either actual or constructive. (*City of Decatur v. Kushmer* (1969), 43 Ill. 2d 334, 253 N.E.2d 425.) Contrarily, it is not a search to observe that which is in open view. (*City of Decatur.*) In the case at bar, Siciliano testified that prior to entering upon the premises on the day in question, he observed refuse, junk vehicles, and garbage piled on the front and side of the house as well as on the side of the tavern. He further stated that the

objects he observed were in plain view and that on prior occasions these objects had been observed in plain view from nearby property. Since both the house and tavern face Harlem Avenue, it is conceivable that the condition of the premises could have been observed from the street and sidewalk. We conclude, therefore, that in entering upon the premises, the village official merely viewed and photographed a condition already observed by him from public places.

■■ Notwithstanding the fact that Siciliano's testimony as to whether the photographs were taken before or after he served defendant with the summons is rather ambiguous, we do not think that such an ambiguity will affect the disposition of this issue. "The obtaining of information or evidence by officers who are where they have a right to be, with a legitimate reason, in the course of their duties, is not a search. [Citations.]" (*People v. Trull* (1978), 64 Ill. App. 3d 385, 389, 380 N.E.2d 1169, 1172.) Having determined that there was no search made and consequently no illegal seizure of evidence, we find no error in the trial court's denial of the motion to suppress.

Defendant next contends that the village failed to sustain its burden of proof. In support of this contention, defendant argues that in order for his convictions to stand the village had the burden of proving that: (1) he was either the owner or the person in control of the property; and (2) the vehicles on the property were in fact "inoperable" and that they had been there for at least six months. We agree.

In a quasi-criminal proceeding such as the present one, the village must prove defendant guilty by a clear preponderance of the evidence. (*City of Chicago v. Robinson* (1975), 32 Ill. App. 3d 149, 336 N.E.2d 158.) Defendant was charged with violating the following village ordinances:

> "Ch. 8, sec. 7—8—3: Deposit of refuse: It shall be unlawful to place or permit to accumulate any dust ashes, or trash of any material anywhere in the Village excepting in a covered container so that it cannot be blown away by the wind. It shall be unlawful to deposit or permit to fall from any vehicle any garbage, refuse or ashes on any public street, alley, or public way of the Village.
>
> Ch. 8, sec. 10—10—4: Nusiance: Inoperable motor vehicles, and abandoned vehicles, as defined herein whether on public or private property, are hereby declared to be a nuisance."

■■ Upon a review of the record, we find no evidence indicating that defendant was either the owner or person in control of the property. Siciliano's testimony that he had seen defendant on the property on various occasions over a period of years and that defendant was in the tavern when he attempted to serve the summons is not sufficient to

establish ownership or control. Moreover, defendant denied ever having been the licensee of the tavern and the village made no attempt to cross-examine the defendant or to rebut his testimony.

Also we do not find sufficient evidence in the record indicating that the vehicles were in fact inoperable and that they had been on the property for at least six months. The term "inoperable motor vehicles" is defined in chapter 10, section 10—10—1 of the Village Code as follows:

> " 'Inoperable motor vehicles' shall mean any motor vehicle from which, for a period of at least six (6) months, the engine, wheels or other parts have been removed, or on which the engine, wheels or other parts have been altered, damaged, or otherwise treated that the vehicle is incapable of being driven under its own motor power; but shall not include a motor vehicle which has been rendered temporarily incapable of being driven under its own power in order to perform ordinary service or repair operations nor to any motor vehicles that are kept within a building when not in use, to historic vehicles over twenty-five (25) years of age, or to a motor vehicle on the premises of a business engaged in wrecking or junking of motor vehicles."

During the suppression hearing, Siciliano referred to the vehicles he observed on the property as "junk vehicles" and later described them as 20-year-old trucks, without license plates and "loaded with storage of stuff that sells at flea markets." He further stated that he did not attempt to start or jump the vehicles. During trial defendant testified that the inoperable motor vehicle shown in one of the photographs was the only one located on the premises on June 17. Some kids had brought it there from the trailer park and had stripped it. He also stated that the vehicle had been there for a few weeks or a few months. According to defendant, the other vehicles on the property were in fact operative.

█▌ Although the vehicles shown in the photographs appeared to have been in disrepair in that certain parts were missing and they were filled with various kinds of materials, we cannot say that these facts alone establish that they were inoperable as defined by the ordinance. The village did not offer evidence to show that the vehicles could not be driven under their own motor power or that they had been on the property for at least six months, which elements were necessary to prove that a violation of the ordinance had occurred. Accordingly, we must reverse defendant's convictions.

█▌ In view of our holding, we need not reach the constitutional issue raised by defendant. However, it is our opinion that since defendant paid the fines imposed for violation of the ordinances and we now find that his convictions cannot stand on appeal, he is entitled to recover the amounts paid. Under the doctrine of voluntary payment, where payments are

made voluntarily, under a claim of right, with knowledge of the facts by the person making the payments, they cannot be recovered on the ground that the claim was illegal, unless the payments are made involuntarily as a result of compulsion or duress. *Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 85 N.E. 200; *Corbett v. Devon Bank* (1973), 12 Ill. App. 3d 559, 299 N.E.2d 521.

■■ In the recent case of *Johnston v. City of Bloomington* (1978), 61 Ill. App. 3d 209, 377 N.E.2d 1174, however, plaintiff sought to recover fines paid under a void ordinance and the court held that plaintiff should not be precluded from recovering the money paid merely because it was paid voluntarily. The court stated:

> "If an accused contests his traffic ticket and is later found guilty at trial, it is ludicrous to say that the payment of the fine was voluntarily made." (61 Ill. App. 3d 209, 213, 377 N.E.2d 1174, 1178.)

We find that the reasoning in *Johnston* is applicable here. Thus, plaintiff's failure to sustain its burden of proof and our subsequent reversal of defendant's convictions provide a sufficient basis for the recovery of money paid by defendant.

Affirmed in part and reversed in part with directions.

SULLIVAN, P. J., and LORENZ, J., concur.