THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES HOBSON, Defendant-Appellant.

First District (3rd Division)    No. 85—2560

Opinion filed April 20, 1988.—Rehearing denied May 18, 1988.

RIZZI, J., specially concurring.

Daniel J. Stohr, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Peter D. Fischer, Assistant State's Attorney, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

After a bench trial, defendant, Charles Hobson, was convicted of possession of a stolen motor vehicle. (Ill. Rev. Stat. 1983, ch. 95½, par. 4—103(a)(1).) The trial court sentenced defendant to an extended term of nine years in the Illinois Department of Corrections. On appeal, he contends the trial court erred in denying his pretrial motion to quash arrest and suppress evidence.

The State's evidence at the suppression hearing revealed the following. In the 20-day period preceding defendant's arrest on April 30, 1984, the Chicago police recovered two stolen and completely stripped automobiles near the residence defendant shared with his common law wife at 9859 S. Woodlawn in Chicago. In the early morning of April 30, Detectives Maurice McNulty and Robert Grinning were conducting a surveillance in the area of 99th and Woodlawn because trails of antifreeze had been found leading from the recovered automobiles to the garage behind defendant's residence. At about 5 o'clock, the detectives were in their automobile, which was parked facing south approximately one or two car lengths into the alley behind the west side of Woodlawn, when they observed defendant driving east on 99th

Street in a white, 1980 four-door Oldsmobile with license plate number ALS 40. Thereafter, the detectives observed defendant drive to the garage behind 9857 S. Woodlawn, back the car into it and close the garage door. The garage was next to the alley behind the east side of Woodlawn and its overhead door opened onto 99th Street. The detectives ran a computer check on the Oldsmobile's license plate number and learned that the car was registered to a resident of Evanston, Illinois, a northern suburb of Chicago, and had not been reported stolen.

The detectives observed the garage for 15 minutes, then drove to the alley next to it and got out of their car. As they were walking up to the garage, its door swung open and they saw defendant standing in the garage. Defendant attempted to get by the detectives but they "grabbed him *** on the apron" between the garage and the sidewalk on 99th Street. The detectives then looked inside defendant's garage and observed that the Oldsmobile had two tires off on the passenger side, which was sitting on milk crates; the hub caps had been removed from the wheels on the driver's side; the lug nuts had been removed from the rear wheel; the steering column had been "peeled," *i.e.*, the left side of the steering column had been pried back and the locking mechanism exposed; and the trunk lock had been "popped." The detectives also observed the two tires the Oldsmobile was missing, a tire iron and some other tools. After making these observations, the detectives handcuffed defendant and put him in their car.

On cross-examination, Detective McNulty testified that he had seen the car with two tires off when he looked into the garage while standing outside of it. He admitted, however, that he had not seen the "peeled" ignition of the Oldsmobile until he had walked into the garage, which was after defendant had walked out of it and the detectives had placed him in handcuffs. The detectives had neither an arrest nor a search warrant nor defendant's consent to search the garage. They later learned from the car's owner that it was missing from its parking space in Evanston.

At trial, the parties stipulated that, if called to testify, Detective McNulty's testimony would be substantially the same as during the suppression hearing. The parties further stipulated that he would testify that: (1) he recovered from the garage an aluminum slam puller, a chrome ratchet wrench, two pairs of gloves, another puller with a trunk lock attachment, a screwdriver, two flashlights, a pair of pliers, a tire iron, a bent coat hanger, an umbrella, and a rubber mallet; (2) after placing defendant under arrest and advising him of his *Miranda* rights, defendant indicated that he understood them, waived them at

that time and stated, "What can I say? You got me." Finally, they stipulated that the owner of the Oldsmobile would testify that he parked his car in Evanston on April 29, 1984, at approximately 8 p.m., did not give defendant authority or permission to be in the automobile, and learned that the car was missing when the police contacted him in the early morning hours of April 30. Defendant stipulated to these facts subject to the fact that the seizure of evidence and his statement occurred after a search and that Detective McNulty "did not see any damage to the ignition or slam pullers or any of that" until after he entered the garage and searched it.

OPINION

■ The issue before us is whether the trial court's denial of defendant's motion to suppress was manifestly erroneous. (*People v. Brett* (1984), 122 Ill. App. 3d 191, 460 N.E.2d 876.) The correctness of the trial court's ruling, not its rationale, is controlling. (*People v. Dyer* (1986), 141 Ill. App. 3d 326, 490 N.E.2d 237.) The trial court ruled, relying on *People v. Morrow* (1982), 104 Ill. App. 3d 995, 433 N.E.2d 985, that the garage was part of the home and thus protected by the fourth amendment. It also found that the police had a right to detain defendant until they discovered "what further was going on." The trial court then reasoned that, under all the facts known to them at the time, including the partially stripped condition of the Oldsmobile, the detectives had probable cause to arrest defendant and could therefore search the garage and the Oldsmobile because the car was in "plain view." The trial court found that this was not a violation of *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.

■ The issue argued by the parties is whether the search is justifiable as a search incidental to lawful arrest or by the plain view doctrine. We disagree. Preliminarily, we must note that the police entry into the garage is not justifiable as a search incidental to a lawful arrest. A search conducted under that exception to the fourth amendment's search warrant requirement is limited to "the arrestee's person and the area 'within his immediate control,' " *i.e.*, "the area from within which he might gain possession of a weapon or destructible evidence." (*Chimel v. California* (1969), 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040.) The record clearly reveals that the police did not enter the garage until after they handcuffed defendant and placed him in their vehicle. In determining whether an alleged warrantless search incidental to arrest exceeds constitutional bounds, the issue is whether the area searched was, at that time, "conceivably

accessible to the arrestee—assuming that he was neither 'an acrobat [nor] a Houdini.' " *United States v. Lyons* (D.C. Cir. 1983), 706 F.2d 321, 330.

We believe the controlling issue here is whether defendant had a legitimate, *i.e.*, actual and reasonable, expectation of privacy in the garage and its contents. If defendant had no such expectation of privacy, the police entry into the garage was not a "search" in the constitutional sense, *i.e.*, there was no police action which was prohibited by the fourth amendment. U.S. Const. amends. IV, XIV.

■ In *Katz v. United States* (1967), 389 U.S. 347, 351-52, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511, the Supreme Court stated:

"[T]he Fourth Amendment protects people, not places. *What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.* See *Lewis v. United States*, 385 U.S. 206, 210; *United States v. Lee*, 274 U.S. 559, 563. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. (Emphasis added.) See *Rios v. United States*, 364 U.S. 253; *Ex parte Jackson*, 96 U.S. 727, 733.''

The court went on to note that "once it is recognized that the Fourth Amendment protects people—and not simply 'areas'—against unreasonable searches and seizures, it becomes clear that the reach of that Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure." The court thus concluded that "the 'trespass' doctrine could no longer be regarded as controlling[ ]" in fourth amendment cases. (*Katz*, 389 U.S. at 353, 19 L. Ed. 2d at 583, 88 S. Ct. at 512.) And, as Justice Harlan stated:

"[T]he rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' Thus, a man's home is, for most purposes, a place where he expects privacy, *but objects, activities, or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited.*" (Emphasis added.) *Katz*, 389 U.S. at 361, 19 L. Ed. 2d at 587-88, 88 S. Ct. at 516 (Harlan, J., concurring).

■ In other words, "[t]he Fourth Amendment protects legitimate expectations of privacy rather than simply places[;] [i]f the inspection by the police does not intrude upon a legitimate expectation of privacy, there is no 'search' subject to the Warrant Clause." (*Illinois v. Andreas* (1983), 463 U.S. 765, 771, 77 L. Ed. 2d 1003, 1010, 103 S.

Ct. 3319, 3324.) "The test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity[;] [r]ather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *Oliver v. United States* (1984), 466 U.S. 170, 182-83, 80 L. Ed. 2d 214, 227, 104 S. Ct. 1735, 1743.

What the Supreme Court meant in *Katz* when it stated that what a person knowingly exposes to the public is not a subject of fourth amendment protection may be deduced, at least to some extent, from the cases cited for that proposition. Of the two, *United States v. Lee* (1927), 274 U.S. 559, 71 L. Ed. 1202, 47 S. Ct. 746, is the more analogous to this case. Therein, the United States Coast Guard seized a motor boat and 71 cases of illegal alcohol on board and arrested the occupants on the open sea. Addressing the issue of an allegedly illegal search, the court stated, in relevant part:

> "Moreover, search, if any of the motor boat at sea did not violate the Constitution, for it was made by the boatswain as an incident of a lawful arrest. [Citation.] *But no search on the high seas is shown.* The testimony of the boatswain shows that he used a searchlight. It is not shown that there was any exploration below decks or under hatches. *For aught that appears, the cases of liquor were on deck and, like the defendants, were discovered before the motor boat was boarded.*" (Emphasis added.) *Lee*, 274 U.S. at 563, 71 L. Ed. 2d at 1204, 47 S. Ct. at 748.

Under these principles, that the police breached the curtilage of the home of which the garage was a part in entering the garage is unavailing to defendant. More importantly, when defendant opened the overhead door of the garage and thereby exposed its interior to the view of any member of the public that might happen by on the sidewalk or in the alley immediately adjacent to the garage, he abandoned any legitimate expectation of privacy in the garage and its contents. Moreover, defendant also surrendered any legitimate expectation of privacy as to his activities in the garage. Even if defendant retained a subjective expectation of privacy after exposing the interior of the garage to public view, that expectation is not one which, given the nature of those activities, society should recognize as reasonable.

▪ In view of those activities, we cannot say that the police entry into the garage infringed upon any personal and societal values protected by the fourth amendment. The framers of the Constitution "did not intend that the Fourth Amendment should shelter criminal activity wherever persons with criminal intent choose to erect barri-

ers and post 'No Trespassing' signs." (*Oliver v. United States* (1984), 466 U.S. 170, 182 n.13, 80 L. Ed. 2d 214, 227 n.13, 104 S. Ct. 1735, 1743 n.13.) And, as *Katz* holds, the fourth amendment was not intended to shelter that which a person knowingly exposes to public view. Therefore, it was not a "search" in the constitutional sense when the police entered the garage and inspected its contents in order to investigate the nature of defendant's activities therein.

"*** [A] search implies prying into a hidden place for that which is concealed, or an invasion and quest with some sort of force, either actual or constructive." In contrast, "it is not a search to observe that which is open to view." (*Village of Bridgeview v. Slominski* (1979), 74 Ill. App. 3d 1, 5, 392 N.E.2d 641.) Here, defendant did not hide or conceal the interior of the garage or his activities therein. As such, the entry of the police into the garage to inspect its interior and investigate those activities for evidence of a crime they had probable cause to believe was being committed in their presence, which we subsequently discuss, was in no manner a search.

■ We must make clear, however, that we do not rely on the plain view doctrine to justify the police entry into the garage. That doctrine permits the warrantless seizure of evidence where: (1) the police have a prior justification for an "initial intrusion" into a constitutionally protected area; (2) they discover evidence inadvertently rather than by knowing of its location and intending to seize it while relying on plain view as a pretext; (3) it is immediately apparent that the items in plain view are evidence of a crime, contraband or otherwise subject to seizure. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 464-71, 29 L. Ed. 2d 564, 581-86, 91 S. Ct. 2022, 2037-41; *People v. Caserta* (1984), 123 Ill. App. 3d 608, 613, 463 N.E.2d 190.) The doctrine is not, in and of itself, one of the recognized exceptions to the fourth amendment's search warrant requirement (*Caserta*, 123 Ill. App. 3d at 613), a fact often misapprehended by the courts. Rather, "[t]he doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure." Finally, plain view is never enough to justify a warrantless search or seizure of evidence absent exigent circumstances. *Coolidge*, 403 U.S. at 466, 468, 29 L. Ed. 2d at 583, 584, 91 S. Ct. at 2038, 2039.

Additionally, *People v. Morrow* (1982), 104 Ill. App. 3d 995, 433 N.E.2d 985, does not compel a conclusion that the police violated the fourth amendment. In *Morrow*, police entered a yard to look through

the open service door of a garage and observed a car therein similar to one used in a rape. The police entered the garage and opened a door of the car to look inside. No one was in the garage at that time. The court noted that "[t]he interior of the garage was not open to view from any public place." (*Morrow*, 104 Ill. App. 3d at 1003.) It concluded that the defendant's expectation of privacy regarding the presence of the car in the garage could not reasonably bar the initial search of the garage given its trivial nature. However, the court held the search of the car illegal in view of the defendant's expectation of privacy regarding the contents of the car, as evidenced by the fact the car was garaged.

■ In *Morrow*, the defendant publicly exposed neither the interior of the garage nor any activities therein to public view. The police inspected the garage only by looking through a service door not accessible to the public. In contrast, defendant here knowingly exposed the interior of the garage to public view. Even more importantly, he also publicly exposed his ongoing activities in the garage. Therefore, he cannot complain that the police entry into the garage to investigate those activities was illegal. Moreover, defendant cannot complain of the search of the interior of the Oldsmobile. A thief has no legitimate expectation of privacy in stolen goods. Assuming that defendant had a subjective expectation of privacy in the interior of the Oldsmobile, such an expectation with respect to a stolen automobile is not reasonable. *State v. Harding* (1983), 137 Ariz. 278, 670 P.2d 383 *cert. denied* (1984), 465 U.S. 1013, 79 L. Ed. 2d 246, 104 S. Ct. 1017; *State v. Myers* (1977), 117 Ariz. 79, 570 P.2d 1252, *cert. denied* (1978), 435 U.S. 928, 55 L. Ed. 2d 524, 98 S. Ct. 1498.

■ Even assuming, however, that defendant retained a legitimate expectation of privacy in the garage and its contents, any violation of his fourth amendment rights was harmless beyond a reasonable doubt. The admission of illegally obtained evidence in a criminal trial following the erroneous denial of a motion to suppress is subject to the harmless error rule. (*People v. Stokes* (1981), 102 Ill. App. 3d 909, 430 N.E.2d 370, citing *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) At trial, the parties stipulated that McNulty would testify that, after detaining defendant when the garage door swung open and "upon looking into" the garage he observed, *inter alia*, the Oldsmobile on milk crates and that the two tires on the right side of the car had been removed. This testimony, the stipulated testimony as to the facts preceding defendant's arrest, which were relevant to establishing probable cause to arrest him, and the stipulated testimony of the Oldsmobile's owner that he had not

given defendant authority, consent, or permission to be in the vehicle were sufficient to prove defendant's guilt of the offense charged beyond a reasonable doubt. As such, any violation of defendant's fourth amendment rights does not require a reversal of his conviction.

Finally, because the police arrested defendant before they entered the garage, we must address the issue of their probable cause to do so. Defendant did not raise the issue of probable cause in his opening brief but addressed it in his reply brief. We may thus hold that he has waived it. However, we may also address it where, as here, we believe justice requires its consideration. *People v. Brownell* (1984), 123 Ill. App. 3d 307, 462 N.E.2d 936.

■■ Probable cause to arrest exists when facts and circumstances known to the police are sufficient to warrant men of reasonable caution to believe that an offense has been committed and that the person arrested has committed it. (*People v. Rimmer* (1985), 132 Ill. App. 3d 107, 476 N.E.2d 1278.) The grounds defendant asserts do not make the trial court's determination of probable cause manifestly erroneous.

That Woodlawn is lined with single family homes did not make it physically impossible for the police to have seen defendant park the Oldsmobile in his garage. Detective McNulty testified on redirect examination that when defendant passed the police officers in the Oldsmobile, they got out of their car and watched the Oldsmobile from the end of the alley. Thus, Detective McNulty's testimony on this point was not inherently improbable, contrary to defendant's assertion.

■■ That Detective McNulty failed to previously mention the antifreeze trailings is also unavailing to defendant. Defendant notes that a witness may be discredited by showing a failure to state a particular fact under circumstances making it either incumbent upon him to do so or likely that he would state the fact, if true. (*People v. Henry* (1970), 47 Ill. 2d 312, 265 N.E.2d 876.) The issue in *Henry* was whether a proper foundation had been laid to impeach a witness by an omission the supreme court classified as a prior inconsistent statement. (*Henry*, 47 Ill. 2d at 319-22.) Here, the issue was the weight to be given testimony of a witness who has been properly impeached by an omission amounting to such a statement. *People v. Delk* (1981), 96 Ill. App. 3d 891, 421 N.E.2d 1341, where the defendant contended a police officer's testimony was incredible because he had not mentioned a fact testified to in his police reports, reveals the proper limitation of *Henry* in the context of this case. The *Delk* court reasoned that the officer's impeachment was a matter for the trial court sitting as the trier of fact. As the defendant had been allowed to complete

his impeachment, unlike the situation in *Henry*, the court concluded that it was for the trial court to determine its significance. (96 Ill. App. 3d at 900.) Similarly here, it was for the trial court to determine the significance of Detective McNulty's failure to mention the antifreeze trailings in his reports or to other police officers, and we cannot say that it erred because it concluded that Detective McNulty was still worthy of belief.

That the Oldsmobile was not reported stolen when the police observed defendant driving it does not negate the existence of probable cause, contrary to defendant's assertion. Generally, it is the nature of auto theft that an owner may not know or report immediately to the police that his car is missing. Specifically here, defendant was observed driving the Oldsmobile at approximately 5 a.m., a fact giving rise to a reasonable inference that he had taken the car shortly before, *i.e.*, during a time of day when most citizens are not yet up and about and do not readily notice such things as a missing car.

The facts known to the police when they detained defendant outside his garage amply supported a finding of probable cause to arrest him. Defendant's contrary arguments are meritless. As such, the public view which the police obtained from without the garage, rather than standing alone and being insufficient to support a probable cause finding, instead confirmed the reasonableness of that determination.

For all of the foregoing reasons, the judgment of conviction entered by the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA, J., concurs.

JUSTICE RIZZI, specially concurring:

The majority concludes that the trial court's "denial of the motion to suppress was manifestly erroneous" because evidence admitted at trial was obtained by the police in violation of the fourth amendment and defendant's right to be free from unreasonable searches and seizures. However, the majority also concludes that defendant's conviction should be affirmed because "[we believe] any violation of his fourth amendment rights was harmless beyond a reasonable doubt." (169 Ill. App. 3d at 493.) I cannot accept the majority's conclusion that there was harmless error beyond a reasonable doubt. In my opinion, if evidence is obtained in violation of the fourth amendment, and is sufficiently probative to be admitted into evidence at trial, the wrongful admission of the evidence should rarely be considered harm-

less beyond a reasonable doubt. It certainly would not be considered harmless beyond a reasonable doubt in this case.

The United States Supreme Court in *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, set forth the harmless error rule regarding constitutional violations. The Court stated that some constitutional errors may be so unimportant and insignificant that they may, consistent with the constitution, be considered harmless error. However, before a Federal constitutional error is declared to be harmless, the court must find that the error was harmless beyond a reasonable doubt. (386 U.S. at 22-24, 17 L. Ed. 2d at 709-11, 87 S. Ct. at 827-28.) The crucial question, according to the *Chapman* Court, is whether a reasonable possibility exists that the evidence complained of might have contributed to the defendant's conviction. Thus, if a constitutional error is one that will "affect substantial rights" of a defendant, that constitutional error should not be deemed harmless. 386 U.S. at 22-24, 17 L. Ed. 2d at 709-11, 87 S. Ct. at 827-28.

The majority states that the trial court's failure to find some prior legal justification for the police officer's visual examination of the evidence seized compelled it to conclude that the denial of defendant's *motion to suppress was manifestly erroneous. Clearly, if the trial* court's actions were manifestly erroneous, the question of whether there is a reasonable possibility that the evidence complained of might have contributed to defendant's conviction must be answered in the affirmative. Here, but for the warrantless arrest of defendant and the subsequent search and seizure of the car, the State lacked sufficient evidence to sustain its case. Thus, the majority's conclusion, based on the majority's own premise, is untenable. The asserted error would not be harmless beyond a reasonable doubt. However, it is my opinion that the majority did not need to address the harmless error issue. I believe that the police officers had probable cause to arrest defendant and that the car was in plain view at the relevant time.

To determine if a police officer has probable cause to make an arrest, it must be shown that the facts and circumstances within his or her knowledge are sufficient to warrant a person of reasonable caution to believe that an offense has been committed and that the person arrested has committed the offense. (*People v. Gutierrez* (1985), 136 Ill. App. 3d 774, 782, 483 N.E.2d 944, 949.) Thus, whether probable cause exists depends on the totality of the circumstances known to the arresting officer at the time of the arrest. The probable cause determination must be based on probabilities measured by the practical considerations of everyday life and not be unduly restricted by techni-

cal rules and regulations. (*People v. Sanchez* (1982), 107 Ill. App. 3d 240, 248, 437 N.E.2d 744, 751.) Once a trial court has denied a motion to quash an arrest for lack of probable cause, a reviewing court should not disturb that court's ruling unless it is manifestly erroneous. *People v. Calderon* (1980), 85 Ill. App. 3d 1030, 1036, 407 N.E.2d 840, 844.

In the present case, I do not believe that the trial court's determination of the probable cause issue was manifestly erroneous. The facts are that within a two-week period, abandoned cars had been stripped or found in close proximity to defendant's garage. There appeared to be a trail of an oil substance leading from these cars into or near, or in the direction of, defendant's garage. While this area and defendant's garage were under surveillance, the police officers saw defendant's car pass very close to them; close enough for them to observe the license plate number. When they entered the license number into their computer, the computer check disclosed that the car was registered to a person who lived in Evanston. The police officers observed defendant's car pull into the alley in front of defendant's garage and then go into the garage. The door was then closed. The police officers drove up to the garage door and heard a clanking sound. As the police officers exited their car and approached the door, defendant came out and made some motion as if to go past them. It was then that defendant was stopped and physically detained on the apron that led to the garage.

As stated earlier, police officers do not have to have actual knowledge of a crime; only probable cause or reasonable grounds for believing that a crime is being committed. Here, the police officers had an area under surveillance where a chop-shop-type operation was suspected. They saw a car at 5 in the morning that was registered to someone who did not live anywhere near the area. The police officers saw the car driven into a garage which they had under surveillance. When the door opened, the police officers were able to see lug nuts on the floor, the car hoisted on milk crates and two wheels that had been removed. Based on these facts, it would be absurd to conclude that the police officers did not have a right to make an investigation. Based upon their initial investigation, coupled with their knowledge of the other factors that existed, the police officers had probable cause to arrest defendant.

This analysis takes into account the fact that defendant was arrested in a public place. In the past, this court has held that a warrantless arrest of a defendant on the porch within the curtilage of his home involves no governmental intrusion on his expectation of pri-

vacy as would violate the Fourth Amendment. (*People v. Jones* (1983), 119 Ill. App. 3d 615, 622, 456 N.E.2d 926, 932-33.) Moreover, a person standing in the open doorway of his place of residence is deemed to be in a "public place" for purposes of the Fourth Amendment. *United States v. Santana* (1976), 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406.

It logically follows that if a porch to a home is deemed a public place for Fourth Amendment purposes, so would be an apron to a garage. Clearly, as the apron was outside of the garage in unobstructed view, defendant's expectation of privacy was the same as he would have in a public place, and his warrantless arrest was valid as long as improper police conduct, deception or coercion did not facilitate the arrest. *People v. Graves* (1985), 135 Ill. App. 3d 727, 730, 482 N.E.2d 223, 225.

Here, the trial court's finding evinces that defendant was not coerced or deceived into exiting the garage onto its apron. The police were conducting a proper investigation when defendant opened the garage door and by his own volition stepped out onto the apron leading to the garage. Therefore, I believe that the trial court correctly determined that the warrantless arrest of defendant was valid.

Since I believe that the police officers possessed probable cause to arrest defendant, I shall address the issue as to the search and seizure of the car. The law is clear that a police officer may seize an item in plain view without a warrant if (1) he views the object from a place where he has a right to be and (2) the facts and circumstances known to him at the time he acts give rise to a reasonable belief that the item seized constitutes evidence of criminal activity. *United States v. Cooks* (7th Cir. 1974), 493 F.2d 668, 670.

In this case, the police were conducting a surveillance of defendant's garage and the surrounding area. When defendant opened the garage door and stepped out, the car, with its lug nuts missing, its body hoisted on milk crates, and its two tires on the ground, was in the immediate visual range of the investigating police officers. Since the car and its equipment were unquestionably in plain view, the officers had the right to walk in, look at the steering column and even look at the trunk lock to confirm their suspicions. Thus, I believe that there was a valid search and seizure, not violative of the mandate of *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.

I concur with the result reached by the majority for the reasons that I have stated, and not for the reasons stated by the majority.