THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GREGORY HAMPTON, Defendant-Appellant.

Fifth District   No. 5—91—0648

Opinion filed July 7, 1993.

CHAPMAN, P.J., dissenting.

Kim G. Noffke, State Appellate Defender's Office panel attorney, of Golconda, and State Appellate Defender's Office, of Mt. Vernon, for appellant.

Dennis Doyle, State's Attorney, of Waterloo (Norbert J. Goetten, Stephen E. Norris, and Nicole VanZant, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Defendant, Gregory E. Hampton, appeals from his convictions for cannabis trafficking and possession of cannabis with intent to deliver. Following his jury trial, held July 9, 1991, in the circuit court of Monroe County, judgment was entered on the conviction for cannabis trafficking, and defendant was sentenced to serve seven years in the Department of Corrections and to a fine of $5,000. Defendant presents two issues on appeal: (1) whether he was denied effective assistance of counsel where his trial counsel failed to file a motion to suppress evidence found when defendant's motor vehicle was searched without a warrant; and (2) whether defendant was proved guilty beyond a reasonable doubt.

The following evidence was presented at defendant's jury trial. The State's first witness was Kevin Sweet, a police officer with the Metropolitan Enforcement Group of Southwestern Illinois (MEGSI), a regional drug task force. He works as an undercover drug officer, investigating the sale of illegal drugs. On April 3 or 4, MEGSI received information that some people from Mt. Vernon, Illinois, were coming to the Belleville area to purchase cannabis. These people were watched and followed, and on April 5, they proceeded to a house in Fults, Illinois, owned by Duane Langhorst. Shortly after leaving the house, the people were arrested, and two pounds of cannabis were found in their possession. From this, MEGSI concluded that the cannabis had been supplied at the Langhorst house in Fults. Michelle Uhl also resides at that house with Duane Langhorst.

Based on information obtained from the individuals arrested, the police obtained a warrant to search the Langhorst house. Upon exe-

cuting the search warrant, the police found Duane Langhorst and Michelle Uhl in the house, along with five pounds of cannabis, $4,700 in cash, numerous guns, and other paraphernalia associated with the sale of illegal drugs. Both Langhorst and Uhl were arrested and charged with possession of cannabis with intent to deliver.

Langhorst and Uhl agreed to cooperate with the police by contacting their suppliers and arranging a delivery of cannabis, at which time the police would be present and arrest the suppliers. Uhl telephoned someone in Poplar Bluff, Missouri, and ordered 15 pounds of cannabis.

Four MEGSI agents remained in the Langhorst house awaiting delivery of the cannabis. Uhl explained that the normal routine for delivery was that Uhl would leave the door to the garage, which is attached to the house and has an automatic opener, open and the suppliers would drive their vehicle into the garage and park, close the garage door behind them, and knock on the door to the house. Uhl would let the suppliers into the house. The suppliers' children would be placed in the living room and the adults would then bring the cannabis in from the garage to the kitchen, where it would be weighed, bagged, and distributed.

Uhl telephoned her suppliers at approximately 1 p.m. on April 6. Later that day, a maroon-colored van approached the Langhorst house, and Uhl stated that it was the Hampton vehicle and that the cannabis should be in it. The van was in fact registered to defendant. The routine that Uhl had described was followed. The van was driven into the garage, the garage door was closed, and the supplier knocked on the house door. Three of the MEGSI agents had remained inside the house, while Sweet had gone outside so that he could reenter through the back door in the event there was a problem. Gregory Hampton and Lori Hampton were admitted into the Langhorst house and were immediately arrested. The Hamptons were accompanied by a six-month-old child.

After the Hamptons were arrested, Sweet entered the garage to check the van. He opened the van's side sliding door and immediately smelled cannabis in the back section of the van. He found underneath a blanket in the back of the van two white trash bags filled with individual clear-plastic zip-lock bags containing a substance appearing to be cannabis. Each zip-lock bag contained approximately one pound of cannabis, and there were 15 zip-lock bags. The cannabis was in the back of the van, behind the back seat, in white trash bags underneath a blanket. This cannabis was packaged in the same manner as that al-

ready recovered from the Langhorst home and from the individuals previously arrested.

Sweet testified that the odor of cannabis was strong when he opened the van. There is no obstruction between the back of the van where the cannabis was located and the driver's seat of the van. The current street value of the 15 pounds of cannabis was $1,500 per pound, or $22,500.

Defendant was arrested and gave his address as Poplar Bluff, Missouri. Also found in the van were cigarette rolling papers and a small clear-plastic bag containing a small quantity of suspected cannabis. This bag was found in the console above the windshield area, in an open compartment. This area was open to the driver and passenger of the van.

On cross-examination, Sweet testified that, as far as he knew, Uhl spoke with her sister, Lori Hampton, when she telephoned Poplar Bluff, and did not speak with defendant, Greg Hampton. Because defendant was arrested before the cannabis was removed from the van, Sweet never saw defendant handle the cannabis. Defendant's fingerprints were not found on any of the bags of cannabis recovered from the van or on the rolling papers. Defendant was not armed and did not attempt to flee, nor was he carrying a large amount of cash on his person. Lori Hampton admitted to police her involvement in the offense, but she did not indicate that her husband was knowingly involved.

On redirect examination, Sweet testified that Uhl stated that she was to pay "the Hamptons" $12,000 for the cannabis. Uhl also indicated that "Lori and Greg Hampton and possibly one or two of their children" would be delivering the cannabis that day. None of the materials recovered from the Hampton van were submitted for fingerprint analysis. On re-cross-examination, Sweet admitted that his report indicated that Uhl stated that Lori Hampton would deliver the cannabis after she and her husband stopped at an auction.

Donna Rees, a forensic scientist for the Illinois State Police, testified for the State. It was stipulated that she weighed and analyzed more than 2,500 grams of cannabis recovered from the Hampton van. The material in the small plastic bag recovered from the front of the van was not analyzed but appeared in all respects to be cannabis.

This concluded the State's evidence. Defendant's motion for a directed verdict was denied. Defendant presented no evidence.

The State argued in closing that it had proved beyond a reasonable doubt all of the elements of the offenses, including that defendant acted knowingly in possessing in the van and delivering the can-

nabis to Uhl and Langhorst. Defendant argued in closing that he did not knowingly possess or deliver the cannabis, that only Lori Hampton was knowingly involved in the distribution of cannabis. The telephone calls arranging the delivery were between Uhl and Lori, defendant was never seen handling the cannabis, nor were his fingerprints found on the cannabis.

After deliberating for 20 minutes, the jury returned verdicts of guilty on both charges. On August 15, 1991, defendant's post-trial motion for a new trial was denied, and defendant was sentenced to serve seven years in the Department of Corrections and to a fine of $5,000. Judgment was entered only on the conviction for cannabis trafficking, the more serious offense.

At no time did defendant's trial counsel move to suppress the cannabis found during the search of defendant's van. The record reflects that the police had neither a warrant for defendant's arrest nor a warrant to search his vehicle. Defendant argues that there were no exigent circumstances justifying a warrantless search of his van and that his counsel's failure to file a motion to suppress the cannabis deprived defendant of the effective assistance of counsel, to which he was constitutionally entitled.

What a criminal defendant must show in order to establish that he received ineffective assistance of counsel is almost so well established by both the United States and Illinois Supreme Courts as not to bear repeating. A defendant must demonstrate both that his counsel's performance was deficient, that is, that his counsel's performance fell below an objective standard of reasonableness, and also that his counsel's deficiency prejudiced him, that is, that but for counsel's deficiency the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068; *People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255.) A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant. If it is easier to dispose of an ineffectiveness claim on the basis of lack of prejudice, a court may do so. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *Albanese*, 104 Ill. 2d at 527, 473 N.E.2d at 1256.

■ In the instant case, we need not decide whether the defendant's trial counsel was deficient in failing to file a motion to suppress evidence, for we find that defendant was not prejudiced by the failure to file such a motion. In order to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. This standard is less than a showing by the preponderance of the evidence that counsel's errors determined the outcome of the proceeding. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) Thus, the question whether defendant was prejudiced by his counsel's failure to file a motion to suppress depends, we think, on whether it is reasonably probable that the motion would have been granted. The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Defendant argues on appeal that a motion to suppress, if filed in the trial court, would have been granted because the warrantless search of his van was illegal. While a search warrant is generally constitutionally required prior to a search of an automobile, warrantless searches of automobiles are permissible where incident to arrest, under the moving-automobile exception, when the vehicle is lawfully impounded, or if valid consent for the search has been obtained. (*People v. Bayles* (1980), 82 Ill. 2d 128, 135, 411 N.E.2d 1346, 1349.) It seems clear to us, and the parties do not dispute, that the warrantless search in the case at bar cannot be justified as incident to arrest, pursuant to impoundment, or consensual. A search incident to arrest is limited to the arrestee's person and the area within his immediate control from within which he might gain possession of a weapon or destructible evidence. (*People v. Hobson* (1988), 169 Ill. App. 3d 485, 489, 525 N.E.2d 895, 897.) It is undisputed that the defendant and his wife were inside the house when arrested and in the custody of three police officers when Sweet entered the garage and searched the van. The record indicates no valid reason to impound the vehicle. It was not parked illegally, dangerously, or in a public place. There is no evidence in the record that the defendant or his wife consented to the search of the van.

What the parties do dispute is whether the "moving-automobile exception" applies to justify the warrantless search. Relying on *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, defendant argues that the automobile exception does not apply in the instant case because there were no exigent circumstances justifying the police officers' failure to obtain a warrant. Defendant points out that the vehicle was parked inside a closed garage, the house and garage had been secured by police, and the homeowners and automobile owners had been arrested. Defendant argues

that the police were obliged to obtain a warrant prior to searching the van and their failure to do so resulted in an unlawful seizure of the cannabis.

In *Coolidge*, the defendant was arrested at his home, pursuant to an arrest warrant, for the murder of a young girl. The investigation had been going on for several weeks, and defendant had been considered a suspect for some time prior to his arrest. Upon arriving at defendant's home to arrest him, the police officers noticed defendant's automobile parked in his driveway. This automobile had been observed near the scene of the crime. The police thereupon seized the vehicle, removed it to the police station, and searched it two days later, finding incriminating evidence. This evidence was introduced at defendant's trial. Defendant's wife was asked to leave the house and stay elsewhere, which she did, and the house was placed under police guard. We note that, while the police did have a search warrant for the vehicle, this warrant was found to be invalid. However, it is clear that the police knew prior to arresting defendant of the presence of the car at his home and planned prior to arriving there to seize and search it.

The United States Supreme Court held that the warrantless search of the car could not be upheld as justified by the "moving-automobile exception." The Court stated that the underlying rationale to this exception to the warrant requirement is that it is not practicable to secure a warrant because the vehicle can be quickly moved. (*Coolidge*, 403 U.S. at 459-60, 29 L. Ed. 2d at 579, 91 S. Ct. at 2034-35.) Exigent circumstances may justify the warrantless search of an automobile because the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. In such a case the opportunity to search is fleeting. *Coolidge*, 403 U.S. at 460, 29 L. Ed. 2d at 579, 91 S. Ct. at 2035.

The Court found, however, that the case before it did not fall within this exception to the warrant requirement. The Court pointed out that the police had known for some time of the probable role of the car in the crime. Defendant had known for some time that he was a suspect in the murder and had had ample opportunity to destroy any evidence he thought incriminating. There was no indication that defendant meant to flee. The Court pointed out that, on the night it was seized, the car was not being used for any illegal purpose and it was regularly parked in the driveway. It was not thought that the car contained stolen goods, contraband, or dangerous items. The Court found that the opportunity for search was hardly "fleeting." Furthermore, the occupants of the house had been taken into custody or re-

moved from the premises, and the premises were guarded by police. The Court stated as follows:

> "[T]here is nothing in this case to invoke the meaning and purpose of the [moving-automobile exception]—no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where 'it is not practicable to secure a warrant,' [citation], and the 'automobile exception,' despite its label, is simply irrelevant." *Coolidge*, 403 U.S. at 462, 29 L. Ed. 2d at 580, 91 S. Ct. at 2035-36.

We think the instant case is distinguishable from *Coolidge* in many respects and that the automobile exception to the warrant requirement does apply in the instant case. The exigent circumstances which were found not to exist in *Coolidge* do exist in the case at bar. In the instant case, the police did not know in advance what vehicle would arrive at the Langhorst house containing drugs. It does not appear from the record that the police could have obtained a search warrant for the Hampton vehicle prior to arresting defendant, for they had no description of the vehicle. Unlike *Coolidge*, the van had been used to commit a crime in the very presence of the police officers and the van did contain contraband. The automobile itself was an integral part of the crime with which defendant was charged. Although the van was parked in a closed garage and the occupants of the house had been arrested, the possibility still existed that someone could have entered the house and removed the contraband and/or the van. Furthermore, unless a guard was posted to watch the van, defendant could have claimed that the cannabis was placed in the van by some third party after his arrest. We think the officers in the case at bar were faced with exigent circumstances which justified the warrantless search of defendant's vehicle. See *People v. Peter* (1973), 55 Ill. 2d 443, 303 N.E.2d 398.

We point out that, even when faced with exigent circumstances, the police must still have probable cause to believe the automobile contains evidence of a crime before searching it. (*United States v. Ross* (1982), 456 U.S. 798, 809, 72 L. Ed. 2d 572, 583-84, 102 S. Ct. 2157, 2164-65.) Neither party in the case at bar disputes the existence of probable cause to search here, and the record demonstrates that the officers did have probable cause to believe the Hampton van contained cannabis. Accordingly, we find that the search of the Hampton

van was reasonable and lawful. A motion to suppress the evidence found in the van would not, in reasonable probability, have been granted by the trial court. Accordingly, defendant was not prejudiced by his counsel's failure to file such a motion to suppress.

■ Defendant next argues on appeal that he was not proved guilty beyond a reasonable doubt because the State's case was entirely circumstantial and the evidence was insufficient to prove that defendant acted knowingly when he delivered the cannabis to the Langhorst residence. Without repeating all of the evidence already set forth herein, we point out that defendant did follow the procedures described by Uhl in the delivery of the cannabis, the smell of the cannabis in the van was quite strong, the amount of cannabis and money involved was quite large, the cannabis took up a large area in the van, Uhl had mentioned defendant as one of her suppliers, and defendant knew that his wife used marijuana. A conviction can be sustained upon circumstantial evidence, and to prove guilt beyond a reasonable doubt does not mean that the jury must disregard the inferences that flow normally from the evidence before it. (*People v. Albanese* (1984), 104 Ill. 2d 504, 514, 473 N.E.2d 1246, 1249.) We think the circumstantial evidence was sufficient to prove defendant's guilt beyond a reasonable doubt. The relevant question is, after viewing all the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) We answer this question in the affirmative.

For the foregoing reasons, the judgment of the circuit court of Monroe County is affirmed.

Affirmed.

MAAG, J., concurs.

PRESIDING JUSTICE CHAPMAN, dissenting:

The majority disposes of the defendant's ineffective assistance of counsel claim by concluding that the warrantless search of the defendant's van was legal. Consequently, the majority reasons, the defendant suffered no prejudice when his trial counsel failed to file a motion to suppress the evidence seized in that warrantless search. To reach this conclusion, the majority addresses whether the moving-automobile exception justifies this search and concludes it does by distinguishing *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564,

91 S. Ct. 2022. I disagree with the majority's attempt to distinguish *Coolidge v. New Hampshire*; therefore, I dissent.

Specifically, I disagree with the majority's conclusion that the police could not have obtained, in advance, a warrant to search the defendant's vehicle because they had no description of the vehicle. The facts cited in the majority's opinion belie this conclusion. The police had an informant who described a precise routine to be followed for a cannabis delivery, a routine which was followed in this case. The informant telephoned the supplier in Poplar Bluff, Missouri, and ordered 15 pounds of cannabis, and when the defendant's van approached, the supplier identified it as the Hampton vehicle and stated that the cannabis should be in it. From these facts, it is apparent that the police had access, through the informant, to a description of the vehicle.

With these facts in hand prior to the arrival of the defendant's vehicle and with time to secure a warrant, the exigent circumstances which justify the warrantless search of an automobile evaporate. Just as in *Coolidge*, the police knew of the probable role of the automobile in the crime, and they knew prior to defendant's arrival at the informant's home that they planned to seize and search it.

In light of *Coolidge*, I believe that the defendant was prejudiced by his trial counsel's failure to move to suppress the cannabis found during the warrantless search of his van. In failing to file a motion to suppress which was at least arguably, if not clearly, supported by case law, the defendant's trial counsel's performance fell below an objective standard of reasonableness. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) I would reverse and remand.