PEOPLE v HOUZE

Docket No. 73717. Argued June 6, 1985 (Calendar No. 32). Decided
    May 20, 1986.

Patrick Houze was charged in the Recorder's Court of Detroit
    with receiving and concealing stolen property over the value of
    $100. The court, David P. Kerwin, J., granted the defendant's
    motion to suppress evidence of the crime and dismissed the
    case, holding that the search of the defendant's garage without
    a warrant violated his right against unreasonable search and
    seizure. The Court of Appeals, WAHLS and HOOD, JJ. (GRIBBS,
    P.J., dissenting), affirmed in an unpublished opinion per curiam
    (Docket No. 69999). The people appeal.

In an opinion by Justice BOYLE, joined by Chief Justice
    WILLIAMS and Justice BRICKLEY, the Supreme Court *held:*

The defendant had no reasonable expectation of privacy in
    the common access area from which the police viewed the
    criminal activity, and, therefore, there was no intrusion on
    protected interests sufficient to constitute a search within the
    ambit of the Fourth Amendment.

The Fourth Amendment and Const 1963, art 1, § 11, afford
    protection against unreasonable searches and seizures in areas
    in which a person has a legitimate expectation of privacy. The
    existence of a property right is only one element to be consid-
    ered in determining whether an expectation of privacy is
    legitimate. Such property interests do not control the right of
    the government to search and seize. Even a property interest
    may be insufficient to establish a legitimate expectation of
    privacy with respect to particular items located on or activity
    conducted within a premises.

Reversed and remanded.

Justice CAVANAGH, joined by Justice RILEY, stated that entry

REFERENCES

Am Jur 2d, Searches and Seizures §§ 2, 20, 35 *et seq.*
Aerial observation or surveillance as violative of Fourth Amend-
    ment guaranty against unreasonable search and seizure. 56 ALR
    Fed 772.
See also the annotations in the ALR3d/4th Quick Index under
    Searches and Seizures.

of police from a public alley onto the curtilage of the defendant's property, even if involving a technical trespass, was reasonable under the circumstances and was not an intrusion on the defendant's reasonable expectation of privacy. Subsequent viewing from that point by the police through an uncovered window of the defendant's unattached garage of suspicious activity by the defendant provided probable cause to believe that a crime was in progress and that the defendant was committing it. Because of the exigent circumstances of witnessing an ongoing felony and the destruction of evidence of the crime, the entry of the garage without a warrant and the subsequent arrest of the defendant and seizure of evidence were proper.

Justice LEVIN, dissenting, stated that the record did not show that the police viewed the interior of the garage from a common access area.

Justice ARCHER took no part in the decision of this case.

OPINION BY BOYLE, J.

1. SEARCHES AND SEIZURES — WITHOUT A WARRANT — EXPECTATION OF PRIVACY.

A defendant had no reasonable expectation of privacy in a common access area of his property from which police viewed criminal activity; thus, there was no intrusion on protected interests sufficient to constitute a search (US Const, Am IV).

OPINION BY CAVANAGH, J.

2. SEARCHES AND SEIZURES — WITHOUT A WARRANT — PROBABLE CAUSE — EXIGENT CIRCUMSTANCES.

*Entry of police from a public alley onto the curtilage of a defendant's property, even if involving a technical trespass, was reasonable under the circumstances and was not an intrusion on the defendant's reasonable expectation of privacy; subsequent viewing from that point by the police through an uncovered window of the defendant's unattached garage of suspicious activity by the defendant provided probable cause to believe that a crime was in progress and that the defendant was committing it, and the exigent circumstances of witnessing an ongoing felony and the destruction of evidence of the crime rendered entry of the garage without a warrant and subsequent arrest of the defendant and seizure of evidence proper (US Const, Am IV; Const 1963, art 1, § 11).*

DISSENTING OPINION BY LEVIN, J.

3. SEARCHES AND SEIZURES — WITHOUT A WARRANT — COMMON
     ACCESS AREAS.

> Evidence of criminal activity obtained by police without a war-
> rant by observing a defendant through a side window of his
> garage should have been suppressed where the record did not
> show that the observation was made from a common access
> area.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Timothy A. Baughman,* Principal Attorney, Research, Training and Appeals, for the people.

*Sobel, Giovanni, Colton & Shifman* (by *Vincent D. Giovanni*) for the defendant.

BOYLE, J. While I agree with the result reached by Justice CAVANAGH, I write separately to clarify that, in my view, defendant had no reasonable expectation of privacy in the common access area from which the police viewed the criminal activity and to avoid leaving the impression that because *People v Dugan,* 102 Mich App 497; 302 NW2d 209 (1980), is distinguished, it is approved.

This Court expressly adopted the "reasonable expectation of privacy" standard, for purposes of Const 1963, art 1, § 11, in *People v Smith,* 420 Mich 1; 360 NW2d 841 (1984), and found that the rationale of *Rakas v Illinois,* 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978), was equally applicable to the protection offered by the Michigan Constitution.

*Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967), held that the Fourth Amendment protects against unreasonable searches and seizures in areas where a person has a legitimate expectation of privacy. Rejecting pre-

vious concepts of property, the Court found that the Fourth Amendment protects "people—and not simply 'areas,'" *Katz, supra,* 353. In a later case, *Oliver v United States,* 466 US 170, 183; 104 S Ct 1735; 80 L Ed 2d 214 (1984), the Court reiterated:

> The existence of a property right is but one element in determining whether expectations of privacy are legitimate. "The premise that property interests control the right of the Government to search and seize has been discredited." *Katz,* 389 US at 353 (quoting *Warden v Hayden,* 387 US 294, 304 [87 S Ct 1642; 18 L Ed 2d 782] (1967)). "[E]ven a property interest in premises may not be sufficient to establish a legitimate expectation of privacy with respect to particular items located on the premises or activity conducted thereon." *Rakas v Illinois,* 439 US [128, 144, n 12; 99 S Ct 421; 58 L Ed 2d 387 (1978)].

Therefore, I find that in this case there was no intrusion on protected interests sufficient to constitute a search within the ambit of the Fourth Amendment or Const 1963, art 1, § 11.

Reversed and remanded.

WILLIAMS, C.J., and BRICKLEY, J., concurred with BOYLE, J.

CAVANAGH, J. The question presented to this Court is whether the trial court properly granted defendant's motion to suppress evidence and to dismiss the charges against him. Defendant argued that the arresting officers trespassed upon his land and made a search and seizure without a warrant which violated his right against unreasonable search and seizure as provided by the Michigan and United States Constitutions, Const 1963, art 1, § 11; US Const, Am IV. The Court of Appeals

affirmed the trial court's decision granting defendant's motion to suppress. We would reverse.

On November 14, 1982, officers of the Detroit Police Department received the following radio dispatch: "North of Glendale stripping of an automobile in progress. Subjects were taking the parts of that car to the garage, rear of 2379 Leslie." The officers proceeded to the alley where they found a Cadillac which had been "stripped" (had certain parts removed). The officers then approached the garage at 2379 Leslie, approximately three-quarters of a block away. At the preliminary hearing, Officer Brown testified as to the relative locations of the stripped Cadillac and the garage:

> *Q.* Where is this location of this Cadillac in the alley in relation to that garage?
> *A.* Straight down the street. It would be north of that garage. Straight down the street about three-quarters of a block. *You can stand in the street in front of the garage and look straight down and you can see the car.* [Emphasis added.]

The police proceeded down the alley from the stripped Cadillac to the garage. According to Officer Brown's testimony, he and his partner walked onto defendant's property and proceeded to the walk-in door on the side of the garage. There were lights on inside the garage, and there was an opening of approximately one square foot through which the officers could see defendant and three others removing the parts of a black Chevrolet. The officer testified that the trunk lid had already been removed from the car and the individuals in the garage were in the process of removing the car's left rear door. The officers then entered the garage, ran a check on the vehicle identification number and determined that it had been stolen. At that time they arrested the four men in the

garage. Defendant was charged with receiving and concealing stolen property over $100.

At trial, defendant moved to suppress the evidence offered against him. The trial court reluctantly granted defendant's motion.

> The Court has reviewed the motion, brief in support of the motion as well as the case submitted by Mr. Giovanni: *People versus Dugan found at 102 Michigan Appeals 497* [302 NW2d 209 (1980)].
>
> Based on the Dugan case, the Court has no alternative but to grant the defendant's motion to suppress with respect to Patrick Houze.
>
> *   *   *
>
> [T]he Dugan case is controlling. It is the law in this State and even though this Court is in disagreement with the analysis in Dugan, it's my responsibility to follow the law.
>
> So, accordingly, the evidence will be suppressed against Mr. Houze.

Like the trial court, the Court of Appeals majority, in affirming, relied largely on *People v Dugan:*

> Specifically, the judge noted that while in his opinion the police had probable cause to suspect that a crime was being committed, this fact did not excuse a warrantless entry on defendant's property. The trial judge relied upon the holding of this Court in *People v Dugan,* 102 Mich App 497; 302 NW2d 209 (1980).
>
> On review, the ruling of the trial judge must be affirmed unless clearly erroneous. *People v Grimmett,* 97 Mich App 212; 293 NW2d 768 (1980). We find no mistakes in the ruling below and affirm.

The dissent would have reversed, noting that the officers had probable cause to search defendant's garage once the anonymous tip had been verified

by the discovery of the stripped Cadillac in the alley. Moreover the informant's tip, corroborated by the finding of the stripped vehicle, was sufficient for the officers to obtain a warrant under the "totality of the circumstances" standard promulgated by the United States Supreme Court in *Illinois v Gates,* 462 US 213; 103 S Ct 2317; 76 L Ed 2d 527 (1983). However, the dissent did not believe that a warrant would be necessary under the exigent circumstances exception to the warrant requirement. In the present case, "[t]he officers were justified in stopping the commission of a crime and seizing evidence before it could be destroyed. The search and seizure was reasonable and therefore constitutional."

As both the trial court and the Court of Appeals decisions rested largely on the case of *People v Dugan, supra,* this Court has found it necessary to reexamine *Dugan* in considering the present appeal. In *Dugan,* the Court of Appeals reversed the defendant's convictions for receiving or concealing stolen property over $100. The Court based its decision on the following findings of fact:

> In the instant case, Officer Gregory Thompson testified that on the morning of January 29, 1978, he contacted Mr. Charles DeBruyne who reported that a snowblower had been taken from his garage. Mr. DeBruyne reported further that he had followed a set of snowblower tracks from his garage, through an alley, to the rear of a house on East Outer Drive. Officer Thompson testified that he then followed the tracks and an accompanying set of footprints to the rear of the house he had been told about, at which point the tracks and footprints continued through a hole in the fence at the rear of the house and into the garage. Officer Thompson then testified that he walked around to the front of the house where he observed a set of footprints leading from the garage to the front

door. He then entered onto the property and went
to the open garage where he observed a snow-
blower that matched the description given by Mr.
DeBruyne. On checking further, he verified that
the serial number on the snowblower matched the
serial number given by Mr. DeBruyne. The officer
testified that he then returned to the front of the
house where he radioed for his sergeant. Shortly
thereafter, the defendant exited from the front of
the house, at which time Officer Thompson asked
the defendant to stop and told the defendant that
he wanted to talk to him. The defendant replied
that if the officer did not have a search warrant he
should stay off the property and then headed
toward the garage. Officer Thompson again en-
tered onto the property, following the defendant
and ordering him to stop. Officer Thompson asked
the defendant where he was going, to which the
defendant replied that he was going to the garage
to get his snowblower. Officer Thompson then
stepped between the defendant and the snow-
blower. The defendant on several occasions de-
manded that the officer leave the property unless
he had a warrant and the officer replied several
times that he did not need a warrant because he
had probable cause and was protecting a crime
scene. Defendant then went into the house and
returned with another young man, who [sic] the
officer estimated to be between 15 and 17 years of
age. Defendant then stated that they were going
into the garage but Officer Thompson would not
allow them to touch the snowblower. The officer
had radioed for assistance, which arrived shortly.
These officers stayed in the garage while Officer
Thompson went to the front of the house to speak
with his sergeant, who had also arrived. The ser-
geant then spoke with the defendant's mother and
Officer Thompson loaded the snowblower into a
scout car. The defendant was subsequently ar-
rested and charged with receiving and concealing
stolen property over the value of $100. [*People v
Dugan, supra,* pp 501-502.]

The prosecutor in *Dugan* attempted to justify

the officer's entry onto defendant's property without a warrant by arguing that there were "exigent circumstances" and that the evidence was in "plain view." *Dugan, supra,* p 503. The Court defined the exigent circumstances exception to the warrant requirement:

> The "exigent circumstances" exception provides that when the police have probable cause to believe that a search of a certain place will produce specific evidence of that crime (the foundation requirements for issuance of a search warrant), there is no need for a warrant if the police also have probable cause to believe that an immediate warrantless search is necessary in order to (1) protect the officers or others, (2) prevent the loss or destruction of evidence, or (3) prevent the escape of the accused. *People v Harris,* 95 Mich App 507, 510; 291 NW2d 97 (1980). See *United States v Chadwick,* 433 US 1; 97 S Ct 2476; 53 L Ed 2d 538 (1977), *People v Plantefaber,* 91 Mich App 764, 770; 283 NW2d 846 (1979). The rationale of the exception is clear; when the police have the probable cause necessary to secure a warrant, but circumstances make it impossible for them to obtain the warrant in time, then it is "reasonable" under the Fourth Amendment to conduct a search and to seize evidence or contraband. See *United States v Guidry,* 534 F2d 1220, 1222-1223 (CA 6, 1976). [*Id.*]

See *People v Oliver,* 417 Mich 366, 380; 338 NW2d 167 (1983).

Probable cause is a reasonable belief based on trustworthy information that an offense has occurred and that the suspect has committed the offense or that evidence of the offense can be found in the place to be searched. *People v Heard,* 65 Mich App 494; 237 NW2d 525 (1975).

While the *Dugan* Court found that the officer had probable cause to believe that a crime had been committed and that the snowblower was

evidence of that crime, it found no exigent circumstances arising before the officer entered the garage to check the serial numbers. Rather, the Court found that the exigent circumstances followed the illegal entry and perhaps were precipitated by it. Had the officer sought a warrant to search the premises prior to his entry into defendant's garage, the defendant may not have attempted to remove the snowblower from the garage. *Dugan, supra,* pp 504-505.

Moreover, the *Dugan* Court rejected the prosecutor's contention that the evidence was in plain view of the officer. The "plain view" exception to the warrant requirement presumes an intrusion, i.e., that the officers were admittedly involved in a search within the meaning of the Fourth Amendment. In order to come within the scope of the "plain view" doctrine the officer must have prior justification for the initial intrusion, must be in a place he has a right to be, and must make an "inadvertent" discovery of the incriminating evidence. *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971).

Thus, the *Dugan* Court determined that once the officer sighted the snowblower in defendant's garage from defendant's driveway, he should have secured a warrant before further search and seizure. Entry into the garage constituted a search of a protected area under the Fourth Amendment as the officer had no legal right to enter the garage without a warrant, defendant's consent, or exigent circumstances. He was no longer on a common path of ingress or egress, but in a building within the curtilage of the home. Any exigent circumstances arose subsequent to the officer's entrance into the garage.

The present case can be distinguished from *Dugan.* The officer in *Dugan* had taken a police

report of theft from Dugan's neighbor, had been shown the tracks in the snow leading to Dugan's garage, and was searching the property for evidence of the crime. In *Houze,* the officers received an anonymous tip, proceeded to the alley, and found a stripped Cadillac. There was no evidence of who owned the car, who had done the stripping, when it had been done, or where the parts had been taken at that time. Nonetheless, it was reasonable on the part of the police to continue their inquiry.

The subsequent police viewing of defendant's activity through the garage door window did not constitute a search. The police did not enter defendant's home or peer into the windows of his home. Rather, they looked into an unattached garage which abutted a public alley from a common access route. This entry onto the curtilage and the observation by police into the garage was limited and reasonable under the circumstances.[1]

Once the police observed defendant and three

---

[1] It is not objectionable for an officer to come upon that part of the property which "has been opened to public common use." The route which any visitor to a residence would use is not private in the Fourth Amendment sense, and thus if police take the route "for the purpose of making a general inquiry" or for some other legitimate reason, they are "free to keep their eyes open," and thus it is permissible for them to look into a garage or similar structure from that location. [1 LaFave, Search & Seizure, § 2.3, p 318.]

Courts have upheld police entries onto driveways, carports, front walks, and porches as nonintrusive. See, e.g., *Pistro v State,* 590 P2d 884 (Alas, 1979)—an officer's observation of a stolen car from defendant's driveway; *State v Seagull,* 26 Wash App 58; 613 P2d 528 (1980), aff'd 95 Wash 2d 898; 632 P2d 44 (1981)—an officer's observation of marijuana plants in a greenhouse twenty feet from house from defendant's back door; *United States v Ventling,* 678 F2d 63 (CA 8, 1982)—an officer's observation of tire tracks from defendant's driveway and front door; *State v Wilbourn,* 364 So 2d 995 (La, 1978)—officer's observation of suspect's car in carport from suspect's driveway. In each case, the courts found that the officers' observations were made from a normal means of ingress or egress.

others in the garage surrounded by automobile parts and in the process of dismantling a car, they had probable cause to believe that a crime was in progress and that defendant Houze was committing it. In the present case, unlike *Dugan,* the police were faced with the exigent circumstances not of their own making and requiring immediate action. Not only were the officers witnessing an ongoing felony, i.e., possessing and concealing stolen automobiles, but they were also witnessing the destruction of evidence of the crime. In *United States v Connor,* 478 F2d 1320, 1323-1324 (CA 7, 1973), the United States Court of Appeals for the Seventh Circuit upheld a police viewing into a suspect's garage and the subsequent arrest of the suspect and seizure of the goods within the garage:

> [T]heir viewing from outside the activities inside the building was not a "search" within the meaning of the Fourth Amendment. The officers were at the garage for the valid purpose of verifying a tip about illegal activities and they reached the rear of the building via a public way. Although, as the findings of fact state, "[i]t was uncertain from the evidence whether the police officers were in the alley or on the adjoining apron outside the rear door of the garage when they first saw the activities being conducted inside, . . . the interior of the garage was clearly visible through the open overhead door from outside the building." Under these circumstances, the defendants had no reasonable expectation of privacy. Even if the officers were on the apron, which was not fenced off from the alley, we think that a mere "technical trespass" did not transform an otherwise reasonable investigation into an unreasonable search. *See United States v Hanahan,* 442 F2d 649, 653-654 (CA 7, 1971).
>
> Once the officers observed the suspicious activity in the garage and the dismantled condition of the Chevrolet, they had probable cause to believe that they were witnessing criminal acts. Further, the

police were then justified in making a warrantless entry into the garage to arrest Conner and Mann. As the district court stated, "it would have been wholly unreasonable to stand idle, watching further damage being done to cars which were almost certainly stolen, while a warrant was obtained. As police officers, they had a duty to preserve and protect the property of the owners, and . . . exigent circumstances justified their entry into the garage."

We would find that the entry of the police onto defendant's property, even if involving a technical trespass, was not an intrusion on defendant's reasonable expectation of privacy and was reasonable. The officers' entry of the garage without a warrant and subsequent arrest of defendant and seizure of evidence were proper.

RILEY, J., concurred with CAVANAGH, J.

LEVIN, J. (*dissenting*). I agree with the majority that were the police to view the stripping of an automobile from a common access area, there would be no search violative of the constitutional protection. The record in the instant case does not, however, show that the police viewed the interior of the garage from a common access area.

I would affirm the decision of the Court of Appeals which affirmed the trial court's decision to grant the motion to suppress, or, if a majority of the Court were of the opinion that remand to the Court of Appeals is appropriate, I could join in remand.

The record indicates that the officers responded to a radio dispatch which was apparently prompted by an anonymous tip. The tip was that the stripping of an automobile was in progress and that the parts were being taken to a garage in the

rear of 2379 Leslie. The officers proceeded to the scene and could observe a stripped Cadillac three-fourths of a block away from the garage in the rear of 2379 Leslie.

The concurring opinion states that two officers "walked onto defendant's property and proceeded to the walk-in door on the side of the garage."[1] They peered into the window and observed the dismantling of an automobile in progress. They then arrested the defendant and three other men who were dismantling the automobile.

The opinion further states that when the officers, following receipt of the apparently anonymous tip, found the stripped Cadillac, they had no evidence of who owned the stripped car, who had done the stripping, when it had been done, or where the parts had been taken. The opinion continues, and I agree: "Nonetheless, it was reasonable on the part of the police to continue their inquiry."[2]

The opinion then states: "The subsequent police viewing of defendant's activity through the garage door window did not constitute a search." The opinion observes that the police "did not enter defendant's home or peer into the windows of his home." They "looked into an unattached garage which abutted a public alley from a common access route. This entry onto the curtilage and the observation by police into the garage was limited and reasonable under the circumstances."[3]

I agree that insofar as the officers may have "walked onto defendant's property" along "a common access route" of public ingress and egress, as in the four cases cited in footnote 1 of the concurring opinion, there would have been no unlawful

[1] *Ante*, p 86.
[2] *Ante*, p 92.
[3] *Ante*, p 92.

search. The record, however, does not establish that the officers were able to gain access to the side entrance door by walking only onto that portion of defendant's property that was a common access route of public ingress and egress.[4] It

---

[4] The officer testified:

*Q.* And what happened when you got to that location?
*A.* We found a white over red Cadillac sitting in the alley stripped. Tires were missing, front end was gone, plates were gone.

We went to the garage, the address they gave us over the radio. Went to the side of the garage. There's a door, a walk in door. We looked in. There were four subjects inside with a black Chevrolet and the door off of it. The trunk lid was off of it, and they were working on the left rear door of it.

\* \* \*

*Q.* You said you were by the door. You initially went by the garage door?
*A.* Yes.
*Q.* Where was the window on this door?
*A.* On the door itself, a regular square window.
*Q.* Could you see clearly?
*A.* There is a screen on it and it was a towel they had on it. You could see in, yes.
*Q.* The towel covered part of the window?
*A.* Yes. There were lights on inside the garage.
*Q.* What percentage of the window was covered by the towel? Was half of it, the upper part or what?
*A.* Like I would say a little over a quarter of the window was open.
*Q.* Only a quarter of the window was open, and through that hole there you could see all four defendants, is that correct?
*A.* Yes.
*Q.* How long did you look through that hole?
*A.* A couple of minutes.
*Q.* Couple of minutes, you, yourself?
*A.* My partner was there first. I was at the big door then I walked around.
*Q.* Officer, you testified one of the doors were [sic] open?
*A.* Yes.
*Q.* Did you ever try to enter this door?
*A.* Yes.
*Q.* Did you knock or just come in?
*A.* Opened it up and walked in.
*Q.* So, did anybody come in through the garage door itself?
*A.* The big door?

does not show that the police traveled a route that a mailman, milkman, or UPS man might have traveled and were able to view the activity in the garage from such a route.[5]

ARCHER, J., took no part in the decision of this case.

---

*Q.* Yes.
*A.* No.

\* \* \*

*Q.* And when you got over there you and your partner went inside the garage, is that right?

*A.* That's right.

*Q.* After you looked in the window, is that right?

*A.* That's right.

*Q.* How many doors were there to this garage?

*A.* Main door, big door that swings up, and a walk in door.

\* \* \*

*Q.* So, the window that you are looking in, it was in the back of the garage it wasn't to the side of the garage?

*A.* To the side of the garage. The door is on the side of the garage. It would be the north side of the garage.

[5] In one of four cases from foreign jurisdictions cited, *State v Wilbourn,* 364 So 2d 995 (La, 1978), the Supreme Court of Louisiana said that a person entering or knocking at the side door of a defendant's residence could readily view the front of a vehicle parked alongside in a carport. Because such a person could see the front of the vehicle from a public or "semi-public" access route, what was discoverable in plain view was not constitutionally protected. In the instant case the record does not show that the garage and a side door of defendant's home were located in such relationship to each other that the police could peer through the window at the side of the garage into the interior of the lighted garage and observe the activity therein while they were standing at the side door of defendant's home or from some other location along a common access route.

In *State v Seagull,* 26 Wash App 58, 64; 613 P2d 528 (1980), an officer observed what he thought to be contraband from a "portion of the premises to which the public, including police officers on legitimate business, are impliedly invited by the owner . . . ." In *Pistro v State,* 590 P2d 884, 885 (Alas, 1979), the police observed what was going on in a garage upon turning into a driveway, about fifty or sixty feet from the garage, and again ten to twenty feet therefrom "en route to the side door . . . ." The court said: "The driveway was a normal means of ingress and egress impliedly open to public use by one desiring to speak to occupants in the garage, or to park off the street while visiting occupants of the house." *Id.,* 887. A similar analysis was adopted by the United States Court of Appeals for the Eighth Circuit in *United States v Ventling,* 678 F2d 63 (CA 8, 1982), where tire tracks were observed by an officer after he had driven onto the driveway and went to the front door of the defendant's home.