864 P.2d 1069

**Bruce T. BAKER, Plaintiff/Appellee,**

v.

**George W. CLOVER, a Pima County deputy sheriff, Defendant/Appellant.**

No. 2 CA–CV 92–0201.

Court of Appeals of Arizona, Division 2, Department B.

May 25, 1993.

Review Denied Jan. 11, 1994.

Joseph L. Esposito, Tucson, for plaintiff/appellee.

Stephen D. Neely, Pima County Atty. by Michael P. Callahan, Tucson, for defendant/appellant.

OPINION

DRUKE, Presiding Judge.

Appellant George W. Clover, a Pima County sheriff's deputy, appeals from an adverse partial summary judgment finding him liable for violating the civil rights of appellee Bruce T. Baker. Because the issue presents a mixed question of fact and law, our review is de novo. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 412 P.2d 47 (1966). We view the facts in the light most favorable to Deputy Clover, the party against whom summary judgment was granted. *See United Bank of Arizona v. Allyn*, 167 Ariz. 191, 805 P.2d 1012 (App.1990).

At approximately 11:15 p.m. on May 20, 1988, Deputy Clover was driving north on Oldfather Road in a marked sheriff's vehicle. Deputy Clover noticed a vehicle driven by Baker approaching from the rear at what Deputy Clover estimated was an excessive rate of speed. Deputy Clover observed that as Baker got closer, he slowed, turned on his high beams, and began to weave from side to side as if he wanted to pass. As Deputy Clover moved to the right to stop, Baker turned left onto Pyracantha, a residential street with a speed limit of 25 miles per hour. Deputy Clover followed and clocked Baker at a speed of approximately 50 miles per hour. Deputy Clover did not, however, activate his

emergency equipment or otherwise attempt to stop Baker. When Baker pulled into the driveway of his residence, Deputy Clover pulled in behind him. Deputy Clover's incident report states what happened next:

No one got out of the vehicle for a minute or so, then it began to back up. After backing several feet, it stopped [and] then the garage door directly in front of it opened. The vehicle then pulled inside the garage.

I then approached the driver's door and shined my light inside, while the driver sat inside. The driver then opened the door and I introduced myself (I was in full uniform). I asked him if he knew the speed limit on Oldfather and on Pyracantha and he stated yes, that it was 25 m.p.h.

After observing several indicia of alcohol intoxication, Deputy Clover arrested Baker for driving under the influence of intoxicating liquor (DUI), and also issued citations for excessive speed and failure to dim headlights.

Baker was tried and convicted by a justice court jury of DUI.[1] He was placed on unsupervised probation for 12 months, served 24 hours in jail, paid a fine of $412.50, had his driver's license suspended for 12 months, attended DUI class, and performed 12 hours of community service. His conviction was set aside and dismissed, however, when the justice court granted his petition for post-conviction relief alleging ineffective assistance of counsel because of counsel's failure to move to suppress evidence of intoxication obtained as a result of Deputy Clover's warrantless entry into Baker's garage. Baker then filed this civil rights action in superior court pursuant to 42 U.S.C. § 1983. The parties filed cross-motions for partial summary judgment on liability, and Baker prevailed. After a bench trial, Baker was awarded $7,073 in damages, plus $13,398.50 in attorney's fees and costs.

Deputy Clover only appeals from the granting of partial summary judgment on liability, raising two issues: (1) whether he unlawfully entered Baker's open garage on May 20, 1988, and (2) if so, whether he is nevertheless protected by qualified immunity. We only address the qualified immunity issue, finding it to be dispositive.

42 U.S.C. § 1983 makes public officials acting under color of law liable in damages for violating a citizen's civil rights. Those rights include the right to be free from unreasonable search or seizure under the Fourth and Fourteenth Amendments to the United States Constitution. *See Soldal v. Cook County, Ill.,* 506 U.S. ——, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). Civil rights liability is, however, circumscribed by qualified immunity. It shields official action which "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982). Thus, the determination of whether official action is protected by qualified immunity turns on whether its unlawfulness was apparent at the time, measured by "the 'objective legal reasonableness' of the action ... in light of the legal rules that were 'clearly established' at the time it was taken...." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523, 530 (1987) (citation omitted). In the case at hand, therefore, we measure the unlawfulness of Deputy Clover's action by the "clearly established" search and seizure law as it existed prior to May 20, 1988, the date on which he entered Baker's open garage.

Deputy Clover clearly had the authority to arrest Baker for speeding.[2] Until its amendment in 1990, A.R.S. § 13–3883 specifically authorized a warrantless misdemeanor arrest under subsection 2 if the officer had probable cause to believe "[a] misdemeanor [had] been committed in his presence and probable

---

1. The two traffic citations were dismissed prior to trial.

2. Although the briefs state that Clover issued two *civil* traffic citations, it is obvious from the copy of the speeding citation included in the record on appeal that it was issued as a *criminal* traffic citation.

cause to believe the person to be arrested [had] committed the offense." [3]

It is also clear that the arrest could have been lawfully effected on Pyracantha itself, *State v. Susko,* 114 Ariz. 547, 562 P.2d 720 (1977), or on the property adjacent to Baker's residence where there was no reasonable expectation of privacy. *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Thus, the arrest could have been lawfully effected at the threshold of the residence, *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), in the driveway, *Pistro v. State,* 590 P.2d 884 (Alaska 1979), or on a normal access route to the residence, such as a walkway, which

> is only a semi-private area, admitting of a reasonable expectation that various members of society may use the walkway in the course of attending to personal or business pursuits with persons residing in the home, including police officers on police business.

*State v. Cloutier,* 544 A.2d 1277, 1279–80 (Me.1988). *See also* 1 W. LaFave, *Search and Seizure* § 2.3 (2d ed. 1987).

It is equally clear that the arrest could not have been lawfully effected within Baker's own home without a warrant, consent, exigent circumstances, or other necessity, none of which we find were present at the time. *State v. Ault,* 150 Ariz. 459, 724 P.2d 545 (1986) (entry into home by police acting on probable cause unlawful absent warrant, consent, exigent circumstances, or other necessity). With regard to this issue, in *Welsh v. Wisconsin,* 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732, 743 (1984), the Supreme Court invalidated a warrantless home entry to effect a DUI arrest, stating:

> Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor.

It is manifestly unclear, however, whether the arrest could have been lawfully effected in Baker's open garage. Not only was there no preexisting law on the subject in Arizona, but it was decidedly unsettled elsewhere. For example, in *People v. Houze,* 425 Mich. 82, 387 N.W.2d 807, 812 (1986), police officers entered defendant's property while investigating a report regarding the in-progress stripping of an automobile, looked through a window in the side door of his garage, and observed defendant and three others dismantling an automobile. The court reversed the trial court's suppression of evidence seized from inside the garage, holding that "the entry of the police onto defendant's property, even if involving a technical trespass, was not an intrusion on defendant's reasonable expectation of privacy and was reasonable." 387 N.W.2d at 812. A different result was reached in *People v. Dugan,* 102 Mich.App. 497, 302 N.W.2d 209 (1980), an earlier Michigan case upon which the trial court had relied. There, an officer investigating the theft of a snowblower observed one inside defendant's open garage and entered the garage to verify its serial number. The *Dugan* court found that the evidence seized should have been suppressed, reversing the conviction for receiving or concealing stolen property. The plurality in *Houze* distinguished *Dugan* based on exigent circumstances. One judge in *Houze* dissented because the record failed to show "that the officers were able to gain access to the side entrance door by walking only onto that portion of defendant's property that was a common access route of public ingress and egress." 387 N.W.2d at 812 (footnote omitted).

Different results were also reached by the Texas courts in *Kann v. State,* 694 S.W.2d 156 (Tex.App.1985), and *Bower v. State,* 769 S.W.2d 887 (Tex.Cr.App.1989). In *Kann,* a divided court invalidated a search warrant issued for defendant's backyard where marijuana was seen growing, because the officer's

---

**3.** In 1990, subsection B was added to A.R.S. § 13-3883 and precludes an arrest for "any traffic law committed in the officer's presence...." Subsection B only permits the officer to "stop and detain a person as is reasonably necessary to investigate an actual or suspected" traffic violation and then serve the person with a copy of the traffic complaint within a reasonable time.

**40**

observation was made from defendant's carport. After determining that the carport was part of the curtilage, the court held that "[w]henever government agents enter into the curtilage they necessarily intrude upon the individual's reasonable expectation of privacy." *Kann*, 694 S.W.2d at 160. However, in *Bower*, a majority of the court concluded that where an officer had looked into the defendant's garage window, he had not violated the defendant's expectation of privacy. The court distinguished *Kann* as follows:

> The officers approached [Bower's] front door by the only means of access—the driveway. The windows of [Bower's] garage were not curtained but rather open to public inspection. The officer's [sic] did not deviate from the public pathway. Clearly, unlike *Kann*, there was no violation of [Bower's] expectation of privacy.

*Bower*, 769 S.W.2d at 897.

Finally, in the Illinois case of *People v. Hobson*, 169 Ill.App.3d 485, 121 Ill.Dec. 588, 525 N.E.2d 895 (1988), detectives investigating auto thefts in the area near defendant's home saw him drive a 1980 Oldsmobile up to his garage, back it in, and close the garage door. After observing the garage for 15 minutes, the detectives then drove to the alley next to it and got out of their vehicle. As they were walking up to the garage, its door swung open and they saw defendant standing inside; they also saw that two tires were off the Oldsmobile. The detectives observed further evidence of dismantling when they entered the garage. In upholding this warrantless entry, the court determined, based on *Katz v. United States, supra*, that

> when defendant opened the overhead door of the garage and thereby exposed its interior to the view of any member of the public that might happen by on the sidewalk or in the alley immediately adjacent to the garage, he abandoned any legitimate expectation of privacy in the garage and its contents.

*Hobson*, 121 Ill.Dec. at 591, 525 N.E.2d at 898.

While we, too, might make a similar determination regarding Deputy Clover's warrantless entry into Baker's open garage on May 20, 1988, we need not do so in order to decide whether his entry was protected by qualified immunity. We hold that it was so protected. As the foregoing discussion reflects, the issue of whether his entry was lawful or unlawful was not "clearly established" by preexisting statutory or decisional law at the time. Accordingly, we reverse the trial court's partial granting of summary judgment on liability entered against Deputy Clover, set aside the award of damages, attorney's fees, and costs, and remand the matter with directions that the trial court enter judgment in favor of Deputy Clover on his cross-motion for summary judgment.

FERNANDEZ and HATHAWAY, JJ., concur.