*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DIRON FLOYD HALL,

       Defendant-Appellant.

UNPUBLISHED
July 11, 2025
10:16 AM

No. 372982
Wayne Circuit Court
LC No. 24-002806-02-FH

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DERRICK EDWARD WILLIAMS, SR.,

       Defendant-Appellant.

No. 373026
Wayne Circuit Court
LC No. 24-002806-01-FH

Before: MALDONADO, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

In these consolidated appeals,[1] in Docket No. 372982, defendant Diron Floyd Hall appeals by leave granted[2] the order denying Hall's motion to suppress evidence. In Docket No. 373026,

---

[1] *People v Hall*, unpublished order of the Court of Appeals, entered January 31, 2025 (Docket Nos. 372982 and 373026).

[2] *People v Hall*, unpublished order of the Court of Appeals, entered January 31, 2025 (Docket No. 372982).

defendant Derrick Edward Williams, Sr. appeals by leave granted[3] the order denying Williams's motion to suppress evidence. We affirm the circuit court's order denying Hall's motion to suppress and reverse the circuit court's order denying Williams's motion to suppress.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The Commercial Auto Theft Section (CATS) of the Detroit Police Department received a tip that a chop shop was being operated out of the backyard of a house owned by Williams on Bringard Street in Detroit, Michigan. On April 17, 2024, aerial surveillance of the Bringard street house was performed by Detective Rick Arslanian, who observed what he understood, given his training and experience as a police officer, to be Hall and Williams stripping cars in Williams's backyard. Approximately 15 officers from DPD's CATS surrounded the backyard, and the decision was made to enter it at approximately 7:00 p.m. Detective Arslanian saw either Hall or Williams remove what appeared to be a firearm from their waistband and toss it behind them. Members of the CATS team observed a 2015 Dodge Durango that had parts from a fully stripped 2023 Dodge Durango. There were also multiple vehicle repair tools in the backyard, along with the engine from a 2019 Chevrolet Malibu.

At some point after the DPD officers entered Williams's backyard, someone left his house who was bleeding from the wrist.[4] DPD officers then performed a sweep of Williams's house and unattached garage, recovering a pistol from a bedroom and a rifle from the garage. The 2023 Dodge Durango had been reported as stolen, as had the 2019 Chevrolet Malibu that was the source of the engine. A search warrant was obtained at approximately 9:00 p.m. Several other car parts were identified in Williams's garage after the warrant was obtained. Those car parts also came from vehicles reported as stolen or the parts themselves had been reported as stolen. Two letters addressed to Williams were collected from his house following the warrant.

Defendants were charged with operating a chop shop, MCL 750.535a(2); receiving or concealing stolen property worth more than $20,000, MCL 750.535(2)(a); and receiving or concealing stolen property worth more than $1,000 but less than $20,000, MCL 750.535(3)(a). Williams was also charged with possession of a firearm by a felon (felon-in-possession), MCL 750.224f; carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and as a second-offense habitual offender, MCL 769.10. Hall was also charged with felony-firearm, which was later dismissed without prejudice.

Before trial, Hall and Williams moved to suppress the evidence against them pursuant to the Fourth Amendment, but the circuit court denied the motions. The court held that Hall did not have a reasonable expectation of privacy on Williams's property, that he failed to show he had standing to challenge the search, and that there was probable cause to arrest him. It held that

---

[3] *People v Williams*, unpublished order of the Court of Appeals, entered January 31, 2025 (Docket No. 373026).

[4] In reviewing the preliminary examination transcript, it is unclear as to who this person was, but in Williams' arguments, he indicates that it was his 17-year-old son.

exigent circumstances had justified the warrantless search of Williams's backyard because there was a risk that evidence could be destroyed. Further, the court held that Williams' Fourth Amendment rights were not violated when police entered his home without a warrant because the search consisted of a necessary protective sweep of the residence.[5] We granted defendants' delayed applications for leave to file an interlocutory appeal challenging those suppression orders. The circuit court stayed the proceedings pending the outcome of these appeals.

## II. DOCKET NO. 372982

### A. WARRANTLESS ARREST—HALL

Hall argues on appeal that the circuit court erred in denying his motion to suppress because he was seized without a warrant, without reasonable suspicion pursuant to *Terry*, and without probable cause.[6] We disagree.

### 1. STANDARD OF REVIEW

We review "whether the Fourth Amendment was violated and whether an exclusionary rule applies" de novo. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). The lower court's factual findings are reviewed for clear error, and will not be reversed unless this Court has a "definite and firm conviction that a mistake was made." *People v Simmons*, 316 Mich App 322, 325; 894 NW2d 86 (2016). The lower court's application of the law and ultimate order regarding a motion to suppress is reviewed de novo. *Hyde*, 285 Mich App at 436.

### 2. LAW AND ANALYSIS

The constitutions of the United States and Michigan protect persons from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. "In general, a search or a seizure conducted without a warrant is presumptively unreasonable and, therefore, unconstitutional." *People v Wheeler*, 336 Mich App 361, 365; 970 NW2d 438 (2021). "The touchstone of the Fourth Amendment is reasonableness." *People v Hammerlund*, 504 Mich 442, 451; 939 NW2d 129 (2019) (citation omitted). A police officer can conduct a "*Terry* stop," which is the detainment of a citizen for a brief investigatory stop, if the officer has "reasonable suspicion" that the citizen is engaged in, or is about to be engaged in, criminal activity. *People v Prude*, 513 Mich 377, 387; 15 NW3d 249 (2023), discussing *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). For a warrantless arrest to be reasonable under the Fourth Amendment, there must be probable cause. *Hammerlund*, 504 Mich at 451. "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that

---

[5] The court also noted that Williams had not asserted what evidence, if any, was seized by the police during the warrantless search of the home.

[6] We note that defendant Hall has not challenged any of the factual findings made by the circuit court.

-3-

an offense has been or is being committed." *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996).

Here, under the totality of the circumstances, the DPD officers had probable cause to believe that Hall was involved in the operation of a chop shop and the receiving or concealing of stolen property.[7] Detective Arslanian testified that he saw "two individuals working on cars, one from one car to the other car." Based on his experience as a police officer, he believed Hall and Williams were stripping the cars. This information provided initial corroboration of the tip received by DPD. Once the members of DPD's CATS were in the backyard, additional tools and car parts could be seen. There were two vehicles, one with parts from the other, as well as an engine from another type of car. This information strengthened the reasonable assumption that a chop shop was being operated. Though Hall argues that he was not seen engaging in any criminal activity that would even justify his seizure under *Prude* or *Terry*, this assertion is without merit. Again, Detective Arslanian saw *two* people stripping cars, indicating that Hall was involved in the process of operating a chop shop because only Hall and Williams were present in the backyard at that time. A vehicle identification technician testified that people typically do not strip a new vehicle and put its parts on an old vehicle in their backyard. Defendants were in the process of taking parts from and fully-stripping a vehicle that was only about a year old (the 2023 Dodge Durango) and placing them on a vehicle that was about nine years old (the 2015 Dodge Durango), which further suggested there was a chop shop in Williams's backyard. The circumstances under which Hall was found were sufficient to provide reasonable suspicion that he was committing a crime, meaning his detainment was appropriate pursuant to *Terry*. Additionally, all of these facts, considered alongside the fact that police discovered that the 2023 Durango was stolen, provided more than enough evidence for a reasonable person to believe that a crime was being committed by Hall, i.e., Hall's arrest did not violate his Fourth Amendment rights. *Hammerlund*, 504 Mich at 451.

In his brief on appeal, Hall argues that the facts of this case are similar to *Prude*. We disagree. In *Prude*, the defendant was sitting in his parked car with the engine turned off in the parking lot of an apartment complex, which was located in an area known for frequent criminal activity. *Prude*, 513 Mich at 382. A police officer asked him for his identification and asked whether he lived at the complex. The defendant responded that he did not live there, that he was

_____

[7] We note that Hall relies mostly on law regarding *Terry* stops in his brief on appeal and that the level of suspicion required for a *Terry* seizure is less than that required for probable cause to arrest. *Prude*, 513 Mich at 387. But we also note that Hall says he was "immediately arrested" in his brief on appeal, the prosecutor never argued that a *Terry* stop had occurred, and the circuit court's order analyzes whether there was probable cause to *arrest* Hall. Hall is essentially arguing that, not only did police not have probable cause to arrest him, police did not even have reasonable suspicion that he had committed a crime, i.e., that even the detainment or seizure of Hall was a violation of his Fourth Amendment rights pursuant to *Terry*. However, as explained above, not only did police had reasonable suspicion that Hall was committing a crime or about to commit a crime, such that he could be detained pursuant to *Terry*, they also had probable cause to arrest him, i.e., neither his detainment nor his arrest violated his Fourth Amendment rights.

visiting his girlfriend who was a resident, and he refused to identify himself. *Id*. at 383, 387. The defendant was told by officers that he was being detained, he eventually fled the scene, and was arrested for fleeing and eluding, as well as resisting and obstructing a police officer. *Id*. at 383-384. The Michigan Supreme Court ultimately held that there was nothing suspicious about a citizen sitting in a parked car in an apartment complex parking lot while visiting a resident of the complex, and his mere presence in a high crime area did not provide particularized suspicion that he was engaged in any criminal activity, meaning he could not be lawfully detained. *Id*. at 382. Because the statutes upon which the defendant was convicted required the officer to be acting lawfully, the convictions were overturned where the element of the officer's lawful performance was not proven beyond a reasonable doubt. *Id*. at 393. We find that the facts in *Prude* are readily distinguishable from the present case. First, in *Prude*, the two statutes the defendant was accused of violating, fleeing and eluding, and resisting and obstructing, each required the prosecution to prove that the police were acting in the lawful performance of their duties.[8] In the present case, none of the statutes under which defendant Hall is charged similarly require the prosecution to prove that the officers were acting in the lawful performance of their duties. Second, whereas the police in *Prude* could not even legally detain the defendant, because there was no reasonable suspicion that he had committed a crime, the police in the present case has probable cause to arrest Hall for the reasons already stated. As previously noted, the level of suspicion required for a *Terry* seizure is less than that required for probable cause to arrest. *Prude*, 513 Mich at 387.

Again, we find that the circuit court did not err in denying Hall's motion to suppress on these grounds.

### B. WARRANTLESS SEARCH—HALL

Hall also argues on appeal that the warrantless search of Williams's property violated Hall's constitutional rights. We disagree.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects . . . ." US Const, Am IV. Under the Fourth Amendment, a search has occurred when a defendant "has a legitimate expectation of privacy in the area searched" and society recognizes that interest as reasonable. *People v Mead*, 503 Mich 205, 212-213; 931 NW2d 557 (2019). "[O]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of [the] right to exclude." *Id*. at 214 (citations and quotation marks omitted; brackets original). The defendant has the burden of demonstrating that they have standing to challenge a search. *People v Mahdi*, 317 Mich App 446, 459; 894 NW2d 732 (2016).

---

[8] For example, MCL 257.602a(1) says "[a] driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, *acting in the lawful performance of his or her duty*, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer. (Emphasis added).

Factors relevant to the determination of standing include ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. [*Id*. (citation omitted).]

While overnight guests in a house have a reasonable expectation of privacy, mere visitors do not. *People v Parker*, 230 Mich App 337, 340-341; 584 NW2d 336 (1998). See also, *Minnesota v Carter*, 525 US 83, 90; 119 S Ct 469; 142 L Ed 2d 373 (1998). In *Carter*, after an anonymous individual approached police and said he had just seen people bagging drugs through a nearby apartment window, police looked in the apartment window through a gap in a closed blind, and saw the defendants placing white powder in bags. *Id*. at 103. After they were arrested, the defendants argued that the observation by police was an unreasonable search in violation of the Fourth Amendment. The United States Supreme Court noted that an overnight guest may have a legitimate expectation of privacy in someone else's home, but a person who is merely present with the consent of the householder may not, and that an expectation of privacy in a commercial property is different from, and less than, a similar expectation at a home. *Id*. at 90. The Court held that the purely commercial nature of the transaction at issue, the relatively short period of time that respondents were on the premises, and the lack of a prior connection between them and the householder all led to the conclusion that their situation was closer to that of one simply on the premises. *Id*. at 91. As a result, any search which may have occurred did not violate their Fourth Amendment rights because they had no legitimate expectation of privacy (which also meant the Court did not need to decide whether the officer's observation constituted a search). *Id*.

On appeal, Hall challenges the search of the Bringard property. The circuit court concluded that Hall did not have standing to challenge the search of Williams's premises. Hall admitted in the circuit court that he did not have standing to challenge the search of Williams's premises. Hall's brief on appeal does not address this concession, and he presents no argument as to how he could have standing. *Mahdi*, 317 Mich App at 459. When a defendant expresses satisfaction with a decision of the trial court, they have waived their right to request appellate review of that issue. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Thus, to the extent that Hall argues that the search of the Bringard property was illegal, he has waived this issue because he specifically stated that he did not have standing to challenge the search.

That being said, had Hall not waived the issue, we would be required to hold that he had no reasonable expectation of privacy, meaning that any search of the premises did not violate his Fourth Amendment rights pursuant to *Parker*, 230 Mich App at 340-341, and *Carter*, 525 US at 90-91.[9]

---

[9] We note that defendant did not argue that the Michigan constitution provides greater protection than the federal constitution as it pertains to visitors and/or those conducting commercial activities, so we have not addressed that issue.

-6-

A.  WARRANTLESS SEARCH—WILLIAMS

1.  SEARCH OF THE BACKYARD

Williams argues that the circuit court erroneously denied his motion to suppress because no warrant exception applied to the warrantless search of his backyard conducted by DPD.  We disagree.

As previously noted, the constitutions of the United States and Michigan protect persons from unreasonable searches and seizures.  US Const, Am IV; Const 1963, art 1, § 11.  A search for the purposes of the Fourth Amendment has occurred if the government interferes with a person's reasonable expectation of privacy.  *Mahdi*, 317 Mich App at 457-458.  An expectation of privacy is reasonable "only if the individual exhibited an actual, subjective expectation of privacy and that actual expectation is one that society recognizes as reasonable."  *People v Taylor*, 253 Mich App 399, 404; 655 NW2d 291 (2002).

"A warrantless search or seizure is presumed unconstitutional unless shown to be within one of several established exceptions."  *People v Lucynski*, 509 Mich 618, 637; 983 NW2d 827 (2022).  If evidence is seized in violation of the Fourth Amendment, it typically must be excluded from trial.  *Mahdi*, 317 Mich App at 458.  The government bears the burden of demonstrating that an exception to the warrant requirement applies.  *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003).  Exceptions to the warrant requirement still require that the search be reasonable and supported by probable cause.  *People v Barbarich (On Remand)*, 291 Mich App 468, 473; 807 NW2d 56 (2011).  The totality of the circumstances should determine the reasonableness of a search.  *People v Williams*, 472 Mich 308, 314; 696 NW2d 636 (2005).  There is probable cause when "the facts and circumstances known to the police officers at the time of the search would lead a reasonably prudent person to believe that a crime has been or is being committed and that evidence will be found in a particular place."  *People v Beuschlein*, 245 Mich App 744, 750; 630 NW2d 921 (2001).

One established exception to the warrant requirement applies when exigent circumstances exist.  *People v Trapp (On Remand)*, 335 Mich App 141, 167; 966 NW2d 420 (2020).  This exception allows police to

> enter a dwelling without a warning if the officers possess probable cause to believe that a crime was recently committed on the premises, and probable cause to believe that the premises contain evidence or perpetrators of the suspected crime.  The police must further establish the existence of an actual emergency on the basis of specific and objective facts indicating that immediate action is necessary to (1) prevent the imminent destruction of evidence, (2) protect the police officers or others, or (3) prevent the escape of a suspect. [*Id*. at 167-168 (citation omitted).]

The mere possibility that evidence may be destroyed is insufficient to justify the exigent circumstances exception.  *People v Blasius*, 435 Mich 573, 595; 459 NW2d 906 (1990).  Rather, the police must be able to "produce specific facts supporting a reasonable and objective belief that

there is an imminent risk of removal of evidence by suspects or third parties." *Id*. See also *Kentucky v King* 563 US 452, 460; 131 S Ct 1849; 179 L Ed 2d 865 (2011).

There is no dispute that Williams had a reasonable expectation of privacy in his house, backyard, and garage. See *Taylor*, 253 Mich App at 403-405. All parties agree that a warrantless search of Williams's property occurred.

The circuit court did not err in holding that exigent circumstances justified the warrantless search of Williams's backyard. Evidence was presented that immediate action was needed because police had a reasonable and objective belief that there was an imminent risk of removal of evidence by the suspects.[10] *Blasius*, 435 Mich at 595. Detective Arslanian witnessed either Hall or Williams remove a gun and toss it away. The evidence in the backyard included two vehicles, one of which was completely stripped, with the exception of the driver's door, which was still intact on the vehicle. As the prosecution argues, attached to each of those vehicles was a plate containing the VIN number, which could be used to determine whether the vehicle was stolen. While it is true that these vehicles, as well another engine, and an engine hoist, were not small items that could be easily destroyed while defendants were surrounded by police, as defendant argues, the VIN plates, smaller equipment, documents, and cell phones were at risk for being removed and/or destroyed by the suspects, as evidenced by the fact that one of the suspects had already removed a firearm from his person and tossed it away. Considering the totality of the circumstances, including the fact that the defendants appeared to be actively stripping a vehicle when the officers arrived (which inherently constitutes destroying evidence of the stolen vehicle), and the fact that the helicopter pilot witnessed one of the suspects try to get rid of a firearm, they supported the officers assertion that there was an imminent risk of removal of evidence pursuant to *Blasius*, 435 Mich at 595, or the imminent destruction of evidence pursuant to *King*, 563 US at 460.

In further support of our holding in this matter we refer to a concurring opinion by Justice Cavanagh in *People v Houze*, 425 Mich 82; 387 NW2d 807 (1986), a case with similar facts. The defendant there moved to suppress evidence that was seized during a warrantless search of his garage. *Houze*, 425 Mich at 86 (CAVANAGH, J., concurring). DPD received a tip that a car was being stripped and the parts were being taken to the defendant's garage. *Id*. DPD located the stripped car in an alley and approached the defendant's nearby garage. *Id*. Once on the defendant's property, DPD observed, through an opening in the wall, the defendant removing parts from another vehicle. *Id*. In his concurring opinion, Justice CAVANAGH stated that DPD was "faced with the exigent circumstances not of their own making and requiring immediate action. Not only were the officers witnessing an ongoing felony, i.e., possessing and concealing stolen automobiles, but they were also witnessing the destruction of evidence of the crime." *Id*. at 93.[11] Concurring

---

[10] On appeal, the prosecution does not argue that immediate action was needed to protect the police or others, so we will not address that issue.

[11] The majority opinion in *Houze* held that no Fourth Amendment violation had occurred, but for a different reason. Specifically, it held that there was "no intrusion on protected interests sufficient to constitute a search within the ambit of the Fourth Amendment or Const 1963, art. 1 § 11"

opinions of our Supreme Court are not binding on this Court, but may be considered for their persuasive value. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 411 n 5; 952 NW2d 586 (2020). We find that the facts of this case are similar to *Houze* and we find Justice Cavanagh's concurring opinion to be persuasive. Just as the police in *Houze* received a dispatch indicating a reported stripping of a car, the present case involved a tip, from either Crime Stoppers or the FBI, that Williams and Hall were stripping vehicles in Williams's yard.[12] Just as the stripping of the vehicle in *Houze* was evidence of the imminent destruction of evidence, the same is true in the present case.

Thus, we find that, because there were exigent circumstances requiring police to enter the backyard, their warrantless entry into the backyard did not violate Williams' Fourth Amendment rights.

## 2. SEARCH OF THE HOME—WILLIAMS

Williams also argues that police violated his Fourth Amendment rights by entering his home without a warrant. We agree.

Another exception to the warrant requirement is the protective-sweep exception. *Beuschlein*, 245 Mich App at 757. "The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v Buie*, 494 US 325, 337; 110 S Ct 1093; 108 L Ed 2d 276 (1990). A protective sweep should be "quick and limited, and conducted for the sole purpose of ensuring the safety of police officers and other persons." *Beuschlein*, 245 Mich App at 757 (citation omitted).

The circuit court erred in holding that the protective-sweep exception justified the warrantless search of Williams's house and garage by Detective Marcus Rice and other DPD officers. In *Beuschlein*, we noted that "[t]he Fourth Amendment permits a properly limited protective sweep in connection with an in-home arrest if the police reasonably believe that the area in question harbors an individual who poses a danger to them or to others." *Id*. (citations omitted). In that case, police had been dispatched in response to a 911 call regarding a domestic incident in progress, possibly involving guns and knives. *Id*. at 747. When the investigating officer arrived, he knocked on the door, there was no response, and he could hear people wrestling or moving around inside the home. *Id*. Shortly thereafter, a woman answered the door. Police instructed her to lie on the floor, they entered the home, spotted the defendant in a back bedroom, and ordered him to come out and lie on the floor. *Id*. Police then conducted a protective sweep of the rest of

---

because the police officers viewed the defendant's garage from a "common access area." *Id*. at 84-85.

[12] One fact in *Houze* that could arguably differentiate it from the present case is that the defendants in *Houze* were taking the stripped parts from the car to a nearby garage, i.e., transporting the parts to another location, but considering the fact that the car was located in the same alley that abutted the curtilage of the garage, that fact does not materially distinguish this case from *Houze*.

the home. *Id*. at 758. Under those circumstances, we held that there were exigent circumstances to enter the home without a warrant and that the protective sweep, which occurred after the defendant was handcuffed, was likewise permissible. *Id*. at 757-758.

In the present case, neither of the arrests in this matter occurred in the home—both defendants were discovered and arrested in the backyard. Thus, unlike *Beuschlein*, where exigent circumstances necessitated the entry of police into the home in order to detain and/or arrest the suspects, nothing about the arrest of defendants in the present case necessitated police entry into the home. Also unlike *Beuschlein*, where police were dispatched to a domestic incident in a home, guns and knives were possibly involved, and the investigating officer actually heard sounds of people possibly wresting inside the home, police in the present case had no information that anything dangerous was occurring inside the home, other than the fact that a teenager walked out of the home bleeding from his hand. The prosecution offered little information about this person and introduced no evidence as to who he was or why he was bleeding.[13] Considering the totality of the circumstances, it was not reasonable to believe that the bleeding teenager's emergence from the house indicated that a potential danger was located in therein. Certainly, if police thought his wound was caused by a potential danger in the house, they would have at least asked him why he was bleeding, yet the record contains no evidence that police even spoke with this individual. Unlike in *Beuschlein*, where police had been told that guns and other weapons may be involved, and where the officer actually heard a commotion occurring inside the home after being dispatched for a domestic disturbance, the officers in the present case had no similar information regarding a danger inside the home.

Our analysis of this matter is consistent with the United States Supreme Court's opinion in *Buie*. In that case, the Court explained that the protective sweep that occurs during an in-home arrest protects the officers in that confined setting of unknown configuration, where an ambush is "more to be feared than it is in open, more familiar surroundings." *Buie*, 494 US at 333. In the present case, the circuit court erred because the arrest of Williams did not take place in the home or other confined setting as in *Buie*.[14] *Id*. Because the prosecution did not meet its burden to show that the search challenged by Williams was justified by a recognized exception to the warrant requirement under the Fourth Amendment, the circuit erred as a matter of law in holding that the warrantless search of Williams's house was proper. *Galloway*, 259 Mich App at 638.[15]

---

[13] All that is known is that his blood was dripping to the ground, and puddling, and that medics were called at some point.

[14] It is not clear exactly when Williams was arrested, but there is no testimony about him going inside his house once the police entered his backyard.

[15] We note that the community caretaking exception does not apply here because it was not raised by the prosecution and the teenager was already outside when his injury was discovered. *People v Hill*, 299 Mich App 402, 405-406; 829 NW2d 908 (2013).

### 3. SEARCH OF THE GARAGE

With regard to the garage, under the limited evidence presented to us, we find that the warrantless search of the unattached garage likewise violated the Fourth Amendment because the prosecution has not presented evidence sufficient to determine that it was covered by the protective-sweep exception or any other exception to the warrant requirement of the Fourth Amendment. Again, the arrests in this matter occurred outside, in the driveway in the enclosed backyard. The prosecution presented no evidence indicating that a potential danger might exist in the garage and, therefore, there was no need to sweep the garage without a warrant. *Buie*, 494 US at 334-335.

## B. SEARCH WARRANT

Williams argues that the evidence gathered during the search of his house with a warrant should be suppressed because the warrant was based on evidence from an illegal search. We decline to address this issue because it is not ripe for our review. *People v Robar*, 321 Mich App 106, 128; 910 NW2d 328 (2017). This Court may review an issue if it determines that "the harm asserted has matured sufficiently to warrant judicial intervention." *Id*. (quotation marks and citation omitted). "Inherent in this assessment is the balancing of any uncertainty as to whether [a party] will actually suffer future injury, with the potential hardship of denying anticipatory relief." *Id*. (quotation marks and citation omitted, brackets original). Here, Williams did not raise the issue of the evidence recovered pursuant to the search warrant in the circuit court, the circuit court has not provided a ruling on the admissibility of this evidence, and Williams has not made an argument as to why this Court should address the issue before the circuit court can. *Id*. Therefore, Williams's argument on this issue is not ripe for appellate review and we decline to consider it in this interlocutory appeal. However, our refusal to address this issue does not preclude Williams from raising this issue in future proceedings.

## IV. CONCLUSION

In Docket No. 372982, we affirm the circuit court's denial of Hall's motion to suppress and remand for further proceedings consistent with this opinion. In Docket No. 373026, we reverse the circuit court's denial of Williams's motion to suppress, for those reasons stated herein, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Mark T. Boonstra
/s/ Randy J. Wallace